**In re LAKESHORE APARTMENTS OF FT. OGLETHORPE, II, LTD., Debtor.**

**Bankruptcy No. 2–89–02502.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Nov. 27, 1989.

Kenneth R. Cookson, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for debtor.

Daniel R. Swetnam, Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, for Sovran Bank.

Charles M. Caldwell, U.S. Trustee Office, Columbus, Ohio, Scott J. Davido, Jones, Day, Reavis & Pogue, Pittsburgh, Pa., for Cardinal Industries, Inc. and Cardinal Industries of Florida, Inc.

James R. Kelly, Dearborn & Ewing, Nashville, Tenn., for Sovran Bank.

## OPINION AND ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR SEQUESTRATION OF RENTS AND PROFITS

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon the motion filed by Sovran Bank/Central South ("Sovran Bank"), seeking relief from the automatic stay or, in the alternative, sequestration of rents and profits. The debtor, Lakeshore Apartments of Fort Ogle-

thorpe, II, Ltd. (the "Debtor"), filed a memorandum contra to the motion, and Sovran Bank subsequently filed a reply. The motion was heard October 18, 1989, following which the Court took this matter under advisement. Six days after the final hearing Sovran Bank filed a submission of additional authority.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine under 28 U.S.C. § 157(b)(2)(G). The following constitute findings of fact and conclusion of law.

## I. PRELIMINARY FACTS

The Debtor is the owner of certain real property known as the Lakeshore Apartments II and located in Ft. Oglethorpe, Georgia (the "Property"). The Property includes a 70 unit apartment complex comprised of efficiency, one bedroom and two bedroom apartments.

On June 30, 1987, the Debtor executed a Promissory Note payable to Cardinal Industries Mortgage Company ("CIMC"). That note was assigned to Sovran Bank on March 22, 1988. On March 1, 1988, the Debtor executed a Modified Promissory Note payable to CIMC which was likewise assigned to Sovran Bank on March 22, 1988.

The obligations of the Debtor under the Modified Promissory Note are secured by a Deed To Secure Debt, Assignment Of Rents And Security Agreement (the "Mortgage") dated June 30, 1987. That mortgage was first recorded July 14, 1987 and a modified version was recorded on March 28, 1988. The Mortgage granted to Sovran Bank a lien on the Property and all personal property located thereon or relating thereto, including, but not limited to, all rental income and revenue from the Property (the "Rents") (collectively the "Collateral"). Sovran Bank perfected its lien on the personal property on July 14, 1987.

Under its terms, the Modified Promissory Note was due and payable on March 15, 1989. The Modified Promissory Note has not been paid and there is presently due and owing to Sovran Bank the principal sum of $1,250,000.00, plus interest in the amount of $121,646.05 through September 18, 1989, plus interest thereafter at $525.18 per diem. The Debtor is also obligated to pay Sovran Bank's attorneys' fees and expenses. Currently the monthly payment required to amortize the note is $12,500.00.

On May 2, 1989, the Debtor filed its voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. Since that date, the Debtor has continued to operate the Property as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

In March and April of 1989, prior to the Debtor filing its petition, Sovran Bank sought to exercise its rights under the Assignment of Rents. Sovran Bank notified all tenants of the Property that the bank should receive payment of the Rents directly. During May and June Sovran Bank received total Rents of approximately $18,000.00. The Rents collected by the bank in the following months, however, were drastically lower. As of the date of the final hearing, Sovran Bank was holding in an escrow account a total of approximately $23,000.00 in collected Rents. As of August 31, 1989 the Debtor also was holding approximately $29,000.00 in its account, representing the net Rents it had collected up to that date but not paid over to Sovran Bank during the pendency of this case.

In its pleadings filed with the Court, Sovran Bank sought relief from the automatic stay for lack of adequate protection pursuant to § 362(d)(1) of the Bankruptcy Code. Sovran Bank orally amended its motion at the October 18 hearing to also include relief from the stay pursuant to § 362(d)(2).

## II. ISSUES

There are two issues before the Court for determination.

1. Has Sovran Bank shown cause for relief from the automatic stay within the meaning of 11 U.S.C. § 362(d)(1) for the unauthorized use of cash collat-

eral or other impairment of the value of Sovran Bank's interest in its Collateral; and

2. Is Sovran Bank entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2) because the Debtor lacks equity in the Property and the Property is not needed for an effective reorganization?

## III. DISCUSSION

A. *Lack of Adequate Protection or Other Cause for Relief from Stay Pursuant to 11 U.S.C. § 362(d)(1).*

The parties agree, and it is therefore uncontested, that there has been no decline in the value of the Property since the filing of this bankruptcy case. Sovran Bank contends, however, that it lacks adequate protection for its interest in the Rents which the Debtor has continued to collect and use without either the bank's consent or an order of this Court. As the Rents are cash collateral within the meaning of 11 U.S.C. § 363(a) and (c), Sovran Bank asserts that such unauthorized usage has caused a decline in the value of its Collateral. As it has not been adequately protected for that decline, Sovran Bank contends it is entitled to relief from the automatic stay. Although Sovran Bank initially also maintained that the Rents were not property of the Debtor and, therefore, not property of the bankruptcy estate after the bank had exercised its rights under the Assignment of Rents pre-petition, that position was not argued at trial and was apparently abandoned by Sovran Bank. Accordingly, that argument will not be considered by the Court.

Section 362(d) of the Bankruptcy Code provides in relevant part:

(d) On request of a party in interest ..., the Court shall grant relief from the stay provided under subsection (a) of this section ...—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).

■ The concept of adequate protection referred to in § 362(d)(1) is not precisely defined by the Bankruptcy Code. *See* 11 U.S.C. § 361. It is generally agreed, however, that in the context of relief from stay a secured creditor's interest is not adequately protected to the extent it is not receiving compensation for the decrease in the value of its security during the term of the stay. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 629, 98 L.Ed.2d 740 (1988).

■ The evidence indicated that the Rents now being collected by the Debtor have been insufficient to date to pay Sovran Bank its regular monthly payment under the terms of the Modified Promissory Note. The only usage made of the Rents by the Debtor, however, has been to pay the operating expenses for the Property and, perhaps, to pay a retainer to counsel. While the Court certainly agrees that non-consensual use of cash collateral can be cause for relief from the stay either for lack of adequate protection or as an independent cause, these parties have been engaged in negotiations for a cash collateral arrangement during that period of usage. Further, the necessity of paying expenses required to maintain the Property is not contested. The remaining Rents have not been used by the Debtor, but are apparently in its bank account to be paid over to Sovran Bank once this contested matter is resolved. Other than a couple of line item expenses discussed only in response to a question from the Court during closing argument, Sovran Bank does not appear to contest the expenses paid. Accordingly, based upon the evidence before it, the Court will not find that the Debtor has inappropriately used cash collateral such that a lack of adequate protection or other cause for relief from automatic stay has been shown on that ground alone. This finding is based in part, however, on the existence of negotiations between the parties prior to the filing of Sovran Bank's motion.

■ Sovran Bank further maintains, however, that its interest in the Rents is not adequately protected because the Rents

after payment of expenses, have been and will continue to be insufficient to make the monthly payment required under the Modified Promissory Note. The Court does not believe that fact alone establishes a right to relief under § 362(d)(1). The amount of net Rents is, in fact, a function of the rental rates for each unit, the rate of vacancies and uncollectible rents, and the normal operating expenses. Given this fact, absent evidence that the Debtor is acting in some manner to decrease gross or net Rents, failing to properly collect or account for Rents, neglecting to fill vacancies and collect Rents due, or increasing expenses inappropriately, the existence of the automatic stay is not causing a decrease in Sovran Bank's interest in these Rents. Therefore, there is no decrease which must be protected in the value of the Rents due solely to the imposition of the stay. Accordingly, Sovran Bank has failed to establish any right to relief from stay under § 362(d)(1).

### B. Relief from Lack of Equity and Lack of Necessity of the Property for an Effective Reorganization.

Section 362(d) of the Bankruptcy Code further provides in relevant part:

(d) On request of a party in interest.... the Court shall grant relief from the stay provided under subsection (c) of this section....—

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

Sovran Bank further argues that it is entitled to relief from the stay pursuant to 11 U.S.C. § 362(d)(2). First, the value of the Property and the interest accumulating on Sovran Bank's debt, coupled with insufficient cash flow to service that debt, has resulted in the decline of any equity cushion such that, realistically, the Debtor has no equity in the Property.

Sovran Bank further asserts that it is entitled to relief from the automatic stay under § 362(d)(2) because there is no prospect that this Debtor will ever successfully reorganize. While the Debtor may be preserving the status quo with regard to the value of the Property, Sovran Bank contends that the Property does not generate enough income, after paying operating expenses, to recapitalize this Debtor or to pay debt service going forward. That inability to reorganize and the Debtor's lack of equity, Sovran Bank argues, justify granting relief from the automatic stay.

The value of the Property, as testified to by Sovran Bank's witness, is between $1,190,000.00 and $1,260,000.00. The Debtor's value, using a lower capitalization rate, is $1,440,000.00. The debt owed to Sovran Bank by mid-November, 1989 is approximately $1,400,000.00. Therefore, it can be seen that the Debtor has no equity in the Property.

The remaining issue, and the one most contested at trial, was whether the Property is necessary for an effective reorganization. Under current law that showing, for which the Debtor has the burden of proof, requires evidence that there is "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers*, 108 S.Ct. at 632 (quoting *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers of Inwood Forest Associates, Ltd.)*, 808 F.2d 363, 370–371 and nn. 12–13 (5th Cir.1987)).

The evidence in this contested matter established that amortization of Sovran Bank's debt, either under the terms of the Modified Promissory Note or in a cramdown situation in a plan of reorganization under 11 U.S.C. § 1129(b), would require a monthly payment equal to or greater than the present monthly payment of $12,500.00.

Resolution of the dispute relating to the Property's ability to generate cash flow sufficient to reorganize by appropriately amortizing such a loan was complicated by inconsistent accounting practices and conflicting financial information. Therefore, in order for the Court to determine that

issue, certain findings must be made with regard to potential gross rents, allowance for vacancies and uncollectible rents, average monthly operating expenses, and debt service. Those findings are stated below.

First, as to potential gross rents, the Court believes the Property presently can generate $21,510.00 per month. This figure is calculated by multiplying the number of each type of apartment (i.e. efficiency, one bedroom or two bedroom apartment) by the listed rent per month for such apartment type. The Court acknowledges that none of the operating reports filed to date have shown actual receipts in that amount; however, that amount is possible prior to adjustments for vacancies and uncollectible rents to arrive at the actual receipts.

Turning next to the rates for vacancies and uncollectible rents, the Court finds those to be 10% and 2.5% respectively. Again, although the vacancy rate reported in recent months has been lower, 10% is a realistic monthly average. In fact, it was the Debtor's witness who testified to that rate, based upon projections he received from the resident manager, area manager and district manager. The rate of uncollectible rents chosen by the Court is also the rate suggested by the Debtor's witness. Although 2.5% is lower than the rate suggested by Sovran Bank's witness, it is appropriate to adjust that percentage to compensate for short-term confusion among tenants as to where they should mail their rent checks.

The third variable to be determined by the Court is the amount of monthly operating expenses. In the context of a cashflow analysis the Court agrees that those expenses should include only actual out-of-pocket expenses occurring in the ordinary course, and not extraordinary expenses such as Chapter 11 legal fees or "paper" expenses such as depreciation. Unfortunately, the record is confusing as to the amount of ordinary operating expenses incurred by the Debtor on a monthly basis for the Property. This confusion seems to be due in part to the accrual basis of accounting used in some of the reports. The problem is compounded when the Debtor accrues and books an expense, but does not pay it. Despite this confusion, the record is clear and the Debtor's witness agreed that normal monthly operating expenses should average approximately $7,600.00 to $8,000.00. After careful review of the testimony presented and all of the exhibits submitted, the Court concludes that $7,800.00 per month is an appropriate amount.

Having defined the variables above, the Court may now determine whether the Property is capable of generating sufficient cash flow to enable the Debtor to successfully reorganize. That analysis is best illustrated by means of a mathematical equation.

| | |
|---|---:|
| Potential Gross Rents | $21,510 |
| Less 10% Vacancies | (2,151) |
| Less 2.5% Uncollectible Rents | (538) |
| Less Normal Operating Expenses | (7,800) |
| Equals Funds Available To Service Debt | 11,021 |
| Less Average Monthly Payment To Service Debt | (12,500) |
| Equals Monthly Shortfall To The Secured Lender | (1,479) |

The mathematical analysis above indicates a shortfall of at least $1,479.00 each month in the Property's ability to generate cashflow to service its mortgage debt. Absent evidence that Sovran Bank's debt could be amortized with smaller monthly payments, that the occupancy rates could be increased, that monthly expenses could be decreased, that Sovran Bank would agree to a lower interest rate, or that the payments are somehow higher than market conditions would dictate, the Court is forced to conclude that this Debtor cannot successfully or effectively reorganize.

### III. CONCLUSION

Based upon the foregoing, Sovran Bank's motion for relief from automatic stay should be, and the same is, hereby granted pursuant to 11 U.S.C. § 362(d)(2).

IT IS SO ORDERED.