In re FAIRFIELD PLAZA
ASSOCIATES, LTD.,
Debtor.

**Bankruptcy No. 89–04513.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

June 1, 1990.

Sandra P. Stockwell, Tallahassee, Fla., for Dollar Dry Dock.

Bill McEachern, Pensacola, Fla., for debtor.

## MEMORANDUM OF OPINION ON MOTION FOR CONFIRMATION PURSUANT TO 11 U.S.C. § 1129(b)

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on April 26, 1990, in connection with confirmation of the debtor, Fairfield Plaza Associates, Ltd. (Fairfield) Second Amended Plan of Reorganization. Dollar Dry Dock Savings Bank (Dollar), holder of a secured claim, has rejected the plan and filed objections to confirmation. Fairfield requested that we conduct a hearing and confirm the plan pursuant to 11 U.S.C. § 1129(b), the "cramdown" provision of the Bankruptcy Code. Having considered the evidence presented at the hearing, together with arguments of counsel and the entire record in this case, we make the following findings of fact and conclusions of law.

This is a single asset case in which Fairfield's sole asset is a shopping center located in Pensacola, Florida. Dollar is the holder of the first mortgage on the shopping center securing a debt as of the date of the petition in the amount of $1,222,-295.00. In addition to the Dollar mortgage, there are four (4) junior mortgages on the property securing claims totalling approximately $4,000,000.00. This case was filed on June 28, 1989, in the face of an impending state court hearing on Dollar's foreclosure action. No payments had been made on Dollar's mortgage since December, 1987, and to date there have still not been any payments made to Dollar. On December 11, 1989, we entered an order denying Dollar relief from the automatic stay imposed by 11 U.S.C. § 362(a) based on a finding that Fairfield had demonstrated that even though it did not have any

equity in the property, that there was a reasonable possibility for a successful reorganization within a reasonable time. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). This finding was based largely on operating projections supplied by the debtor which included a proposed lease of some 10,200 square feet of vacant space in the shopping center for a term of five (5) years. In connection with that hearing, the parties agreed that pursuant to an appraisal of G. Pratt Martin, Jr., M.A.I. prepared on October 30, 1989, the value of the property was $1,185,000.00. The stay was continued in effect conditioned upon Fairfield filing its plan of reorganization and disclosure statement not later than close of business on December 29, 1989, which Fairfield did.

In its plan as amended prior to hearing on confirmation, Fairfield classifies Dollar as having an allowed secured claim in the amount of $1,185,000.00 and an unsecured claim for the balance of its claim. All remaining mortgage holders are treated as unsecured claimants. The plan proposes to give to Dollar on account of its secured claim a new promissory note secured by a first mortgage on the shopping center in the amount of $1,185,000.00 to be paid over thirty (30) years at an interest rate of 10% per annum. Included in the security would be a pledge of the rents issues and profits and a collateral assignment of rents and leases until such time as the indebtedness under the note is fully paid. With respect to the unsecured claims to include the unsecured portion of Dollar's claim, the plan proposes to pay each holder a sum equal to 5% of the allowed amount of such claim within thirty (30) days of the confirmation of the plan and thereafter 33% of the allowed amount of each claim would accrue interest at the rate of 9½% per annum with such amount to be paid in full upon any sale or refinancing of the property. The interest would be payable to the extent that funds are available from net operating income of the shopping center. The 33% of the allowed amount of each unsecured claim would be secured by mortgages on the property subordinate to the first mort-

gage of Dollar and with priorities consistent with the pre-petition priorities of those mortgagees. Thus, Dollar's unsecured portion would be secured by a second mortgage on the property.

At the hearing on this matter, we took evidence from the debtor in support of the plan's feasibility. Since the entry of the December 11, 1989 Order on Motion for Relief from Stay, two significant events have occurred with respect to this debtor. First of all, the debtor was able to negotiate a lease modification with Woolco, its major anchor tenant for the recommencement of lease payments, which payments had been abated in order for Woolco to recoup funds which it had expended in making improvements to its lease space. Secondly, an affiliate of the debtor has apparently agreed to infuse $150,000.00 in additional funds over the next three (3) years for capital improvements and renovations to the shopping center. The major lease, which in December was expected to be entered into never materialized, and as of the date of the confirmation hearing occupancy at the center is only 70%. The debtor however submitted operating projections based on the current actual rent rolls which reflect adequate net operating income to cover all of the debt service provided for in the plan of reorganization and further to support a refinancing of the shopping center in seven (7) years with sufficient funds available from the refinancing to satisfy the remaining balance on the note given pursuant to the plan and to pay the interest of the unsecured claimants under the plan. These projections are based on utilization of the $150,000.00 contribution for making necessary capital improvements to the shopping center.

In order for the plan to be confirmed without the acceptance by Dollar, the plan must not discriminate unfairly against Dollar and must be fair and equitable with respect to its claim. In order for it to be fair and equitable it must meet one of the following requirements:

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such

liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A).

Here, it is the debtor's position that by providing deferred cash payments based on the appraised value of the center, it meets the fair and equitable standard for confirmation.

This case presents a situation very similar to that considered by this court in *In re Chandler and Chandler Motor Inns*, 93 B.R. 755 (Bkrtcy.N.D.Fla 1988). In that case as in this case the debtor attempts what we will characterize as a "bait and switch" strategy for Chapter 11. The bait in this frequently seen scenario is the low appraisal offered early in the case in connection with relief from the automatic stay. With a low appraisal, the debtor reduces the amount of the secured debt to be dealt with under the plan. Then comes the switch at confirmation. After having written down the secured debt, the debtor comes into confirmation with very rosy income projections which demonstrate not only an ability to pay the reduced secured claim, but also sufficient income with which to offer payments to unsecured creditors whose claims would be eliminated in a foreclosure in order to obtain their acceptances of the plan. The problem with this approach and strategy is twofold. First of all, it ignores the provisions of 11 U.S.C. § 506(a) which provides that in connection with the valuation of secured claims that "such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest". Here, the value of $1,185,000.00 established at the stay modification hearing was based on an appraisal assuming a sale of the property. However, at confirmation, no sale is proposed for the debtor proposes to retain the property. No value has been determined based on the proposed use or disposition of the property in connection with the plan of reorganization. Secondly, the factual assumptions upon which the appraisal was based and the facts which the debtor proffers in support of his proposed plan of reorganization are totally inconsistent with each other. In this instance, the operating projections offered by the debtor and those contained in the appraisal are substantially similar. There is, however, one major difference between the assumptions in the debtor's plan and those contained in the appraisal. In arriving at the $1,185,000.00 value, the appraiser concluded that the shopping center was in need of $750,000.00 worth of repairs and renovations in order to achieve the operating results projected therein. Thus, in all three approaches taken by the appraiser, the $750,000.00 repair cost was deducted from the value based on the projected operating results thus resulting in the low valuation. In attempting to prove feasibility of the plan, the debtor disputes the necessity for the immediate expenditure of $750,000.00 for repairs and renovation. Thus, instead of spending $750,000.00 immediately to upgrade the shopping center, the debtor's projections indicate that with the $150,000.00 contributed by the affiliate over three (3) years, it will be able to achieve the same operating results. With these projections by the debtor, which are totally inconsistent with the assumptions taken by the appraiser, we cannot find for the purposes of confirmation that the allowed amount of Dollar's secured claim would be $1,185,000.00. In-

stead, the value of the property securing that claim would have to be determined in light of the projections offered by the debtor. We are satisfied that with those projections, a value substantially in excess of $1,185,000.00 would be reached by an appraiser and accordingly the plan which is based on payment of that amount is not fair and equitable with respect to Dollar.

Accordingly, we find that the debtor has not met the requirements of 11 U.S.C. § 1129(b) and the plan cannot be confirmed over the objection of Dollar. A separate final order will be entered in accordance herewith.