# Applicability of the Civil Service Provisions of Title 5 of the United States Code to the United States Enrichment Corporation

The United States Enrichment Corporation is exempt from the civil service provisions of title 5 of the United States Code

June 22, 1993

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
UNITED STATES ENRICHMENT CORPORATION

You have requested our opinion on whether the United States Enrichment Corporation ("USEC") is subject to the civil service provisions of title 5 of the United States Code. We have concluded that, under the statute establishing USEC, title IX of the Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776, 2923 (codified at 42 U.S.C. §§ 2297-2297e-7) ("the Act"), USEC is exempt from the civil service provisions of title 5.

I.

Before USEC was established, the Department of Energy ("DOE") produced enriched uranium for use as fuel for commercial nuclear power plants. Congress decided that the DOE program was inefficient; the problems included increasing international competition, declining global market share, and billions of dollars in unrecovered costs of production. In response to these problems, Congress decided to transfer the DOE program to a government corporation that could eventually be sold to the private sector, in order to ensure that the program would be operated in a more business-like fashion. *See, e.g.*, H.R. Rep. No. 102-474, pt. VIII, at 75-76 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1953, 2293-94; *see also* 42 U.S.C. § 2297a(1), (7) (identifying purposes of USEC, including "[t]o operate as a business enterprise on a profitable and efficient basis" and "[t]o conduct the business as a self-financing corporation and eliminate the need for Federal Government appropriations or [most] sources of Federal financing").

The rules regulating USEC's employees are set forth in 42 U.S.C. § 2297b-4. This provision authorizes the Board of Directors of USEC to "appoint such officers and employees as are necessary for the transaction of its business." 42 U.S.C. § 2297b-4(a). In addition, 42 U.S.C. § 2297b-4(b) provides:

> The Board shall, without regard to section 5301 of title 5, fix the compensation of all officers and employees of the Corporation, define their duties, and provide a system of organization to fix respon-

27

> sibility and promote efficiency. Any officer or employee of the
> Corporation may be removed in the discretion of the Board.

By granting the Board broad discretion to make decisions regarding hiring and employment, including decisions on wage rates and removal of employees, these provisions suggest a congressional intent to exempt USEC from the civil service laws regulating such decisions, including the statutory pay system embodied in 5 U.S.C. §§ 5301-5392.

We recognize that, arguably, the use in § 2297b-4(b) of the phrase "without regard to section 5301 of title 5" reveals an intent not to exempt USEC from any provisions of title 5 other than § 5301. However, under the traditional rules of statutory construction, this is not a plausible interpretation of the Act, and the Act should be read as fully exempting USEC from the civil service laws, including title 5's provisions regarding pay rates.

## II.

### A.

In interpreting the Act we "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988), and we must interpret the specific statutory language identified above in the context of the "remainder of the statutory scheme," *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988).

Section 5301 of title 5 establishes general policy criteria for setting pay rates for federal employees under the General Schedule; the specific rules regulating federal pay rates and systems, in turn, are set forth in the subsequent sections of chapter 53 of title 5. Accordingly, construing the Act to exempt USEC from § 5301 but not the implementing provisions of chapter 53 would create an anomaly: the Board would be authorized to make employment decisions without complying with the basic policy provision of chapter 53, but would have to comply with the specific statutory and regulatory provisions intended to effectuate that policy. It would not make sense to interpret the Act as containing this contradiction, especially because all the other relevant evidence shows that Congress intended to exempt USEC from all of title 5's civil service provisions.[1]

When 42 U.S.C. § 2297b-4(b) is read in the context of the other employee provisions in § 2297b-4 and the rest of the Act as a whole, it becomes even clearer that USEC is exempt from the civil service provisions of title 5, including all the

---

[1] This reasoning is sufficient to defeat the *expressio unius est exclusio alterius* maxim on which the argument for a contrary interpretation would be based. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47 25 (5th ed 1992) (*expressio unius* maxim should not be applied if its application would result in a contradiction or would not serve the purpose for which the statute was enacted)

rules regarding pay in chapter 53. First, the other provisions in 42 U.S.C. § 2297b-4 demonstrate that Congress authorized USEC to make employment-related decisions without regard to the civil service laws. For example, subsection 2297b-4(c) provides that USEC is to follow certain *general principles* set forth in title 5 governing personnel matters, but also expressly exempts USEC from the *specific requirements* of title 5 in making these decisions:

> **Applicable criteria.** The Board shall ensure that the personnel function and organization is consistent with the principles of section 2301(b) of title 5, relating to merit system principles. Officers and employees shall be appointed, promoted, and assigned on the basis of merit and fitness, and other personnel actions shall be consistent with the principles of fairness and due process *but without regard to those provisions of title 5 governing appointments and other personnel actions in the competitive service.*

42 U.S.C. § 2297b-4(c) (emphasis added).

Furthermore, 42 U.S.C. § 2297b-4 contains certain provisions relating to the rights of employees transferred to USEC from DOE and other government positions. These provisions indicate that Congress contemplated that USEC employees would not be protected by the civil service laws. For example,

> [c]ompensation, benefits, and other terms and conditions of employment in effect immediately prior to the transition date, whether provided by statute or by rules of the Department or the executive branch, shall continue to apply to officers and employees who transfer to the Corporation from other Federal employment *until changed by the Board.*

42 U.S.C. § 2297b-4(d) (emphasis added). This provision reflects Congress's assumption that USEC would be free to set the terms and conditions of employment for its employees, because if USEC were bound by civil service statutes Congress would not have needed to guarantee transferred employees their existing employment terms and conditions. Furthermore, the protection is merely temporary, for it lasts only "until changed by the Board." Thus, Congress provided that USEC would be authorized to change the terms and conditions of employment for transferred government employees without regard to civil service laws. The natural inference from this authorization is that Congress assumed it had given USEC the same authority with respect to new hires and other non-governmental employees.

In addition, the part of the Act that governs the benefits of transferees and detailees reflects Congress's assumption that USEC would retain discretion to set

pension and other benefits without regard to the statutory civil service benefit requirements. That provision states:

> At the request of the Board and subject to the approval of the Secretary, an employee of the [DOE] may be transferred or detailed as provided for in section 2297b-14 of this title, to the Corporation without any loss in accrued benefits or standing within the Civil Service System. For those employees who accept transfer to the Corporation, it shall be their option as to whether to have any accrued retirement benefits transferred to *a retirement system established by the Corporation* or to retain their coverage under either the Civil Service Retirement System or the Federal Employees' Retirement System, as applicable, in lieu of coverage by the Corporation's retirement system. For those employees electing to remain with one of the Federal retirement systems, the Corporation shall withhold pay and make such payments as are required under the Federal retirement system. For those [DOE] employees detailed, the [DOE] shall offer those employees a position of like grade, compensation, and proximity to their official duty station after their services are no longer required by the Corporation.

42 U.S.C. § 2297b-4(e)(4) (emphasis added). If Congress had intended that USEC would generally be subject to the civil service laws, it would not have been necessary for the Act to state that employees transferred or detailed from government jobs to USEC would retain "accrued benefits [and] standing within the Civil Service System." Furthermore, subsection 2297b-4(e)(4) constitutes congressional authorization for USEC to establish its own retirement system in lieu of one of the two retirement systems established in title 5.[2]

Finally, 42 U.S.C. § 2297b-4(e)(3) states that USEC is subject to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169. This provision also reflects Congress's intent to treat USEC more like a private employer than a government employer for purposes of employment guidelines. Government agencies and departments subject generally to the civil service system of title 5 are not covered by the NLRA; instead, these government entities are subject to the Labor-Management and Employee Relations subpart of title 5. *See* 5 U.S.C. §§ 7101-7135.

Thus, when read together, the employee provisions of the Act require the conclusion that the Act exempts USEC from all of title 5's pay provisions. This interpretation is also consistent with the general purposes of USEC's enabling statute as a whole. As discussed above, Congress established USEC so that it could

---

[2] *See* 5 U.S C. §§ 8331-8351 (Civil Service Retirement System), *id.* §§ 8401-8479 (Federal Employees' Retirement System)

implement the uranium enrichment program in a more efficient and competitive manner. USEC was created in order to "operate as a business enterprise on a profitable and efficient basis," 42 U.S.C. § 2297a(1); *see id.* § 2297a(7) (citing as one purpose of USEC, to "conduct the business as a self-financing corporation and eliminate the need for Federal Government appropriations or sources of Federal financing"),[3] and accordingly was authorized to have "all the powers of a private corporation incorporated under the District of Columbia Business Corporation Act," *id.* § 2297b-2(1). The flexibility to make employment decisions without regard to the civil service laws, and particularly to attract highly qualified business executives without regard to federal salary caps, constitutes the sort of competitive advantage that USEC needs to carry out the purpose of the Act.

Our conclusion is also supported by the fact that Congress contemplated that USEC would start out as a government corporation but would eventually be privatized without further action by Congress. Under 42 U.S.C. § 2297d(a), USEC is required to "prepare a strategic plan for transferring ownership of the Corporation to private investors" within two years after the date DOE's uranium enrichment program is transferred to USEC. The privatization plan must be transmitted to the President and Congress, *id.* § 2297d(d); USEC is authorized to implement the plan without additional legislation, so long as the President approves the plan and USEC notifies Congress of its intent to implement the plan and then waits 60 days, *id.* § 2297d-1. Thus, if the Act were interpreted to subject USEC to title 5's civil service provisions and USEC is then privatized, USEC as a private corporation would be covered by the civil service laws. This would produce a very odd result, and one that contradicts the purpose of the Act — namely, to enable USEC to take advantage of the added flexibility a private corporation has to compete in international markets.

### B.

The sparse legislative history of the Act supports the above analysis, because it shows that Congress rejected the Senate's language, which would have subjected USEC to most of the civil service laws. The original Senate and House versions of

---

[3] *See also* H.R. Rep. No. 102-474, pt. II, at 77, *reprinted in* 1992 U.S.C.C.A.N. at 2084 ("A Government corporation, with a clearly defined mission to operate as a commercial enterprise on a profitable and efficient basis, will provide the enrichment program with the businesslike structure and flexibility that is crucial to the survival of the program "), H.R. Rep No. 102-474, pt VIII, at 76, *reprinted in* 1992 U.S.C.C.A.N. at 2294 ("This proposal [establishing USEC] addresses the current problems of the DOE program through the establishment of a Government Corporation which eventually could be sold to the private sector However, it is critical that the new Government Corporation operate according to certain principles in order to be successful The first principle is that the Government Corporation must be *treated like a private corporation to the fullest extent practicable* In order for the Government Corporation to become attractive to private investors, it will have to be competitive in the marketplace This will require freedom from bureaucratic behavior and weaning from special government favoritism ") (emphasis added).

the Act treated USEC's employees quite differently. Section 1504 of S. 2166, 102d Cong. (1992), the bill first passed by the Senate,[4] provided:

> (a) Officers and employees of the Corporation shall be officers and employees of the United States.

> (b) The Administrator [of USEC] shall appoint all officers, employees and agents of the Corporation as are deemed necessary to effect the provisions of this title without regard to any administratively imposed limits on personnel, and any such officer, employee or agent shall only be subject to the supervision of the Administrator. The Administrator shall fix all compensation *in accordance with the comparable pay provisions of section 5301 of title 5, United States Code, with compensation levels not to exceed Executive Level II, as defined in section 5313 of title 5, United States Code*: Provided, That the Administrator may, upon recommendation by the Secretary and the Corporate Board . . . and approval by the President, appoint up to ten officers whose compensation shall not exceed an amount which is 20 per centum less than the compensation received by the Administrator, but not less than Executive Level II.

(Emphasis added.) The Senate bill also provided that USEC employees were to be included in one of the two federal civil service retirement systems, S. 2166, § 1504(c), and it explicitly subjected USEC employees to federal laws restricting employee conduct such as the Hatch Act, *id.* § 1504(e). As explained in the committee report accompanying S. 210, 102d Cong. (1991), a bill with identical employee provisions introduced the previous year, the Senate bill would have "subject[ed] USEC employees to all civil service laws except as otherwise provided" in the bill. S. Rep. No. 102-63, at 29 (1991) (discussing effect of § 1504(a)).

Thus, the Senate bill would have explicitly subjected USEC to the compensation provisions of title 5, including the pay cap provision. By contrast, the bill first passed by the House of Representatives, H.R. 776, 102d Cong. (1992), specifically provided that the "[o]fficers and employees of the Corporation *shall not* be officers and employees of the United States." *Id.* § 1305(a) (emphasis added). This language would have unambiguously exempted USEC from all civil service laws.[5]

---

[4] *See* 138 Cong. Rec. 2567 (1992)

[5] The only other employee-related provisions in the bill protected the existing rights of employees at facilities performing functions vested in USEC and subjected USEC to the NLRA. H.R 776, § 1305(b). Similar provisions were incorporated into the legislation ultimately enacted into law. *See* 42 U.S.C. § 2297b-4(e)(1)-(3).

H.R. 776 was passed by the House on May 27, 1992 and sent on to the Senate. 138 Cong. Rec. at 12,725. The Senate amended H.R. 776 and replaced the House language regarding USEC employees with the language contained in its own bill, S. 2166 (quoted above); the Senate passed the amended bill on July 30, 1992. 138 Cong. Rec. at 20,430.

No legislative history explains the differences between the House and Senate versions of the employee provisions and the language produced by the House-Senate conference and enacted into law. However, a comparison of the House and Senate bills makes clear that the provisions agreed upon effected a compromise under which USEC was exempted from all of the civil service laws relating to employee pay and benefits, but was required to implement "merit system principles" and apply fairness and due process in carrying out personnel actions under 42 U.S.C. § 2297b-4(c).[6] Thus, unlike the Senate version, the Act specifically exempts USEC from 5 U.S.C. § 5301 and authorizes it to fix the compensation of employees, take personnel actions without regard to the relevant title 5 rules, and establish its own pension plan. Furthermore, the Act provides that the "[b]oard shall appoint such officers and employees as are necessary for the transaction of its business," 42 U.S.C. § 2297b-4(a), in contrast to the original Senate version of the bill, which provided that officers and employees would be officers and employees of the United States.

## III.

Based on the foregoing analysis of the Act and its legislative history, we have concluded that USEC is exempt from the civil service provisions of title 5 of the United States Code.

DANIEL L. KOFFSKY
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[6] *See* Letter for Honorable James B. King, Director, Office of Personnel Management, from J. Bennett Johnston, Chairman, Senate Committee on Energy and Natural Resources (May 6, 1993) (explaining the Senator's view of the legislative history, based on informal sources that did not become part of the official recorded legislative history) We merely note that this letter supports the theory explaining the change in the bill's language, because the letter is a post-enactment interpretation by one Member of Congress, we do not rely on it in any way for our interpretation. *See, e.g , Sullivan v. Finkelstein,* 496 U S. 617, 631-32 (1990) (Scalia, J , concurring in part); *Tataranowicz v Sullivan,* 959 F 2d 268, 278 n 6 (D C. Cir 1992), *cert denied,* 506 U S. 1048 (1993), *Multnomah Legal Servs Workers Union v. Legal Servs. Corp.,* 936 F 2d 1547, 1555 (9th Cir 1991).