**In re IMMENHAUSEN CORPORATION, Debtor.**

**Bankruptcy No. 92–8656–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 27, 1993.

Order Granting Reconsideration and Clarification Jan. 26, 1994.

Charles M. Tatelbaum, of Johnson, Blakely, Pope, Clearwater, FL, Elihu Fier, of Meyer, Kowalski, Blum & Fier, New York City, for debtor.

Sara Kistler, Asst. U.S. Trustee.

John J. Lamoureux, Judith A. English, Tampa, FL, for Berliner Handels–Und Frankfurter Bank.

## ORDER ON DEBTOR'S OBJECTION TO BERLINER HANDELS–UND FRANKFURTER BANK'S UNSECURED CLAIM AND MOTION FOR RECLASSIFICATION TO CLASS 1 SECURED CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties of interest upon the Objection to Berliner Handels–Und Frankfurter Bank's (BHF) Unsecured Claim and Motion for Reclassification to Class 1 Secured Claim filed by Immenhausen Corporation (Debtor). Having considered the Motion filed by the Debtor, argument of counsel together with the record, this Court now finds and concludes as follows:

The Debtor is the owner and operator of a 187,000 square foot shopping center known as Northdale Court Shopping Center, located at 15786 North Dale Mabry Highway, Tampa, Florida (the Property). On December 19, 1986, the Debtor executed and delivered a promissory note to BHF in the original principal amount of sixteen million five hundred thousand dollars ($16,500,000.00). To secure payment of the Note, the Debtor executed a Mortgage, Assignment of Rents and Security Agreement (the Mortgage) on the shopping center, on the personal property connected with the operation of the center and executed two UCC–1 Financing Statements describing the collateral pledged to secure the payment of the note. On December 19, 1986, to further secure payment of the Note, the Debtor also executed and delivered to BHF an Assignment of Leases and the Rents paid by the tenants of the shopping center. The Assignment of Rents executed by the Debtor provides, among other things:

(1) *Assignor's License to Operate if No Default.*
So long as no Default (as defined in the Mortgage, Assignment of Rents and Security Agreement, dated as of even date herewith, made by the Assignor, as mortgagor, to Assignee, as mortgagee) shall exist, Assignee hereby grants to Assignor the exclusive right to collect, receive and apply for its own account of all Rents accruing by virtue of the Leases.

(2) *Assignee's Rights in Event of Default.*
Immediately upon the occurrence of a Default, the right mentioned in the *paragraph 1* shall cease and determine, and in such event Assignee is hereby expressly and irrevocably authorized to direct all tenants under the Leases (*"Tenants"*) to pay to Assignee all Rents. If such Default shall have been cured by Assignor, Assignee may, at its election upon the exercise of its sole discretion, direct Tenants to pay to Assignor such Rents.

On December 29, 1987, the Debtor and BHF entered into a Modification Agreement extending the Note's maturity date to December 31, 1988. On December 31, 1988, the Note's maturity date was extended again by BHF to March 31, 1989. On March 31, 1989, the Debtor and BHF entered into a Third Modification Agreement extending the

Note's maturity date to September 30, 1989. The outstanding principal balance of the loan was reduced to $14,000,000.00. On October 26, 1989, the Debtor and BHF entered into a Fourth Modification Agreement extending the Note's maturity date to September 30, 1990, at which time the outstanding principal balance of the loan was $13,000,000.00. The loan was further reduced to the sum of $11,-000,000.00 by the payment of $1,000,000.00 in February 1991 and $1,000,000.00 in December 1991. The Note became due on September 30, 1990 and was extended several times by BHF. However, it is without dispute that the Debtor defaulted on the last Note and on March 3, 1992 and March 20, 1992, BHF accelerated the outstanding balance of principal, interest and other payments of the same from the Debtor and demanded immediate payment.

Having failed to receive satisfaction, on May 1, 1992, BHF commenced a foreclosure action against the Debtor and sought an Order to sequester the rents collected by the Debtor from the tenants of the shopping center. BHF failed to obtain an order of sequestration and the Debtor continued to collect the rents prior to the filing date of the Debtor's Petition for Relief and even after the commencement of the case. On June 26, 1992, the Debtor filed its voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code.

As of the date of the commencement of this case, the balance of the Debtor's obligation owed to BHF had an outstanding balance of $11,000,000.00 principal plus $371,-881.71 in accrued and unpaid interest and expenses, and an unspecified amount of attorneys fees. On July 6, 1992, the Debtor filed its Motion, sought authority to continue to operate the shopping center and use the postpetition rents collected from the tenants of the shopping center in the operation of the shopping center. On July 23, 1992, this Court entered an Interim Cash Collateral Order granting BHF a postpetition lien on the Debtor's postpetition rents, issues and profits, and ordered the Debtor to make monthly payments of $62,000.00 to BHF as adequate protection. The Order also authorized the Debtor to use the rents collected temporarily and set the Motion to Use Cash

Collateral for a final evidentiary hearing for July 31, 1992. The Interim Cash Collateral Order was amended on July 28, 1992, but there were no modifications of the terms of the adequate protection payments previously ordered. On November 24, 1992, BHF filed a Motion to Value its Collateral. The Motion was heard in due course and on February 24, 1993, entered and Order and determined that the value of the BHF's collateral was $11,-000,000.00. The Debtor neither appealed the Valuation Order nor requested reconsideration of the Valuation Order.

On March 8, 1993, BHF timely filed its Proof of Secured Claim based on the Valuation Order in the amount of $11,000,000.00, as a secured claim and an unsecured claim in the amount of $371,881.71 plus attorneys fees, costs and interest. On April 2, 1993, the Debtor filed its Objection to the unsecured claim of BHF and also filed a Motion entitled, "Reclassification to Class 1 Secured Claim." (sic)

The Debtor's Objection to the unsecured claim of BHF is based upon the following: (1) since the valuation hearings, the Debtor obtained four new leases, thus increasing the value of the shopping center to the extent that BHF is now fully secured, therefore it no longer has an unsecured deficiency claim; on (2) in the alternative, BHF was an undersecured creditor at all times therefore was not entitled to any adequate protection payments and all payments made to BHF during the pendency of this Chapter 11 case should be applied to reduce the amount of BHF's unsecured claim, in turn eliminating BHF unsecured claim.

On April 12, 1993, BHF filed its Response to the Debtor's Objection claiming that the Objection should be overruled inasmuch as post petition adequate protection payments made to BHF were to compensate BHF for "use of post petition rents" generated by the shopping center and the adequate protection payments should not be applied to reduce either BHF's secured or its unsecured claim. According to BHF, it is entitled to have an allowable secured claim in the value of its collateral, i.e., $11 Million, and an allowed unsecured claim for the balance owed to the

Debtor, i.e., the accrued interest in the amount of $371,881.00 plus its costs and reasonable attorney fees. In this connection it should be pointed out that the adequate protection payments made by the Debtor to BHF so far totals $744,000.00.

The proposition urged by BHF is novel, indeed, in that it is premised on the notion that adequate protection payments made by the owner of real estate to a mortgagee as a condition to Debtor's right to use cash collateral, i.e., the rent collected by the Debtor from the encumbered real property is like the payments made by a Debtor-in-Possession in a Chapter 11 case for the right to use liened equipment or chattels, i.e., motor vehicles, all of which have use value and are subject to economic depreciation. In sum, according to BHF such payments should be treated as cost of the use of the secured party's collateral and should not be credited to any part of the obligation owed by the Debtor to the secured party. This Court is unwilling to accept this novel proposition, albeit not necessarily because of the argument advanced by the Debtor in opposition to the contentions advanced by BHF. Especially this Court rejects the proposition that these alleged new leases increased the value of the shopping center to such an extent that BHF has no unsecured claim. This leaves for consideration the ultimate question whether or not how should the payments made by the debtor as adequate protection be applied, if applied at all.

It cannot be seriously gainsaid that the basic purpose of adequate protection is to preserve the status quo and to assure the secured party that its position will not be impaired because of the automatic stay imposed by § 362(a) upon commencement of the case which prevented the secured party, i.e., BHF to enforce its right under its bargain. This is accomplished by requiring the Debtor first to assure that the secured party's collateral is protected from economic loss of value, it is safe, preserved and adequately insured and that the indebtedness owed to the secured party does not increase due to continuing accrual of interest which, of course, would eat into whatever excess value the encumbered property had over the

amount of indebtedness owed to the secured party on the date of the commencement of the case. For example, if at the commencement of the case the total debt owed to the secured party was $10 Million, in principal and accrued interest, including costs and attorneys fees and the property was worth $11 Million, enough to cover the total indebtedness, but at the end of 14 months the indebtedness grew to $12 Million because of accrued interest, a previously fully secured creditor would be reduced to only a partially secured creditor. On the other hand, if the accrual of postpetition interest is paid by the Debtor during the pendency of the Chapter 11 case, the status quo is preserved because the debt owed to the secured party remains as it was at the commencement of the case and the position of the secured party will not be negatively impacted due to the operation of the automatic stay. The fact that the secured party was stayed and was not permitted to enforce its right against its collateral is of no consequence because courts no longer recognize the right to compensation for "lost opportunity cost" or "use value" of the collateral. *United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (an undersecured creditor is not entitled to adequate protection payments for the "lost opportunity cost" or "use value" of real property collateral under § 362(d)(1) of the Bankruptcy Code); *In re Flagler-at-First Associates, Ltd.*, 114 B.R. 297 (Bankr.S.D.Fla.1990).

Based on the foregoing, this Court is satisfied that all payments made by the Debtor so far totalling the sum of $744,000.00 should be applied first to the interest accrued postpetition, thereby eliminating the unsecured claim of BHF, and the surplus should be applied to the principal owed to BHF. After all the surplus rents collected by a receiver in a foreclosure action, after all the operating costs have been paid would be credited against the total indebtedness to the mortgagee, the mortgagor would not be entitled to keep the surplus funds as a bonus and keep the funds as a windfall. Based on the foregoing, this Court is satisfied that the Debtor's Objection is sustained, and the unsecured claim filed by BHF is disallowed

in toto albeit not on the grounds urged by the Debtor and the secured claim of BHF shall be reduced by the amount remaining after the adequate protection payments have been applied to pay the accrued interest, costs and attorney fees.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Objection to Berliner Handels–Und Frankfurter Bank's Unsecured Claim and Motion for Reclassification to Class 1 Secured Claim filed by Immenhausen Corporation be, and is hereby, sustained. BHF has fifteen (15) days from the date of this Order to filed a reduced secured claim which credits the remaining post petition adequate protection payments.

DONE AND ORDERED.

**ORDER ON DEBTOR'S MOTION FOR CLARIFICATION OF DEBTOR'S OBJECTION TO BERLINER HANDELS–UND FRANKFURTER BANK'S UNSECURED CLAIM AND MOTION FOR RECLASSIFICATION TO CLASS 1 SECURED CLAIM, AND ON MOTION TO RECONSIDER ORDER ON DEBTOR'S OBJECTION TO BERLINER HANDELS–UND FRANKFURTER BANK'S UNSECURED CLAIM AND MOTION FOR RECLASSIFICATION TO CLASS ONE SECURED CLAIM FILED BY BERLINER HANDELS–UND FRANKFURTER BANK**

THIS CAUSE came on for consideration, ex parte, upon two Motions for Reconsideration of this Court's Order dated September 27, 1993 on the Debtor's Objection to Berliner Handels–Und Frankfurter Bank's Unsecured Claim and Motion for Reclassification to Class 1 Secured Claim. The Motions for Reconsideration are interposed by both the Debtor and the Berliner Handels–Und Frankfurter Bank (BHF) and are directed to different aspects of the Order. The facts relevant to resolution of these Motions are as follows:

The Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code on June 26, 1992. As of that date, the balance of the Debtor's obligation to BHF, as evidenced by a Note and Mortgage, totalled $11,000,000.00 in principal and $371,881.71 in accrued and unpaid interest and expenses. On July 23, 1992, this Court entered an Order denying BHF relief from the automatic stay, and directing the Debtor to make monthly adequate protection payments, in the amount of the original contract payments under the Note. On February 24, 1993, this Court entered an order determining the value of BHF's collateral as $11,000,000.00. On March 8, 1993, BHF filed a timely proof of claim asserting a secured claim of $11,000,000.00 and an unsecured claim of $371,881.71, plus attorneys fees, costs and interest. On September 27, 1993, this Court entered its Order determining that the adequate protection payments paid by the Debtor, now totalling $744,000.00, should be applied first to interest which had accrued post-petition, "thereby eliminating the unsecured claim of BHF, and the surplus should be applied to the principal owed to BHF." Furthermore, the Court disallowed BHF's unsecured claim in toto, as a result of the applied adequate protection payments.

In its Motion, the Debtor points out that BHF was under-secured as of the commencement of the case, by virtue of the $371,881.71 unsecured claim for pre-petition interest and expenses. Therefore, according to the Debtor, no interest should accrue *post*-petition.

The Motion filed by BHF also focuses in on the language relating to the application of the adequate protection payments. According to BHF, this language has created confusion because, on the face of the Order, it appears that the Court accepted the proposition that adequate protection should be used to maintain the status quo, yet the Court applied the adequate protection payments to reduce the pre-petition unsecured claim.

The Court has considered the Motions, together with the record, and finds that the September 27, 1993 order is in fact internally inconsistent, and therefore, the Motions under consideration should be granted and the September 27, 1993 Order should be amended as follows:

It should be noted at the outset, that as of the commencement of this Case, BHF Bank was under-secured on its Note and Mortgage, and held a *pre*-petition unsecured claim in the amount of $371,881.71. It is generally accepted that an under-secured creditor is not entitled to adequate protection payments without a showing of economic depreciation. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). It is further accepted as a general principle that where a creditor is under-secured, the creditor is not entitled to post-petition interest.

In the record before the Court, there is no showing by BHF of economic depreciation. Instead, the shopping center which is the collateral of BHF is almost fully leased, and generating income. Therefore, this Court is satisfied that it was improper to order adequate protection payments to be paid by the Debtor. Inasmuch as the payments were paid, this Court is satisfied that the payments should be applied to the principal balance of the Note.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Clarification filed by Berliner Handels–Und Frankfurter is hereby granted. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Reconsideration filed by the Debtor is hereby granted. It is further

ORDERED, ADJUDGED AND DE-CREED that the Order dated September 27, 1993 shall be amended and modified as recited above.

DONE AND ORDERED.