# UNITED SAVINGS ASSOCIATION OF TEXAS *v.* TIMBERS OF INWOOD FOREST ASSOCIATES, LTD.

No. 86–1602.   Argued December 1, 1987—Decided January 20, 1988

Scalia, J., delivered the opinion for a unanimous Court.

*H. Miles Cohn* argued the cause and filed briefs for petitioner.

*Leonard H. Simon* argued the cause for respondent. With him on the brief were *Daphne Levey* and *Timothy J. Henderson.**

JUSTICE SCALIA delivered the opinion of the Court.

Petitioner United Savings Association of Texas seeks review of an en banc decision of the United States Court of Appeals for the Fifth Circuit, holding that petitioner was not entitled to receive from respondent debtor, which is under-

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Fried, Assistant Attorney General Willard,* and *Deputy Solicitor General Cohen;* for the California League of Savings Institutions et al. by *John A. Graham;* for the National Commercial Finance Association by *A. Bruce Schimberg, Rex E. Lee, J. Ronald Trost, Shalom L. Kohn,* and *Frank R. Kennedy;* and for Thomas H. Jackson, *pro se.*

Briefs of *amici curiae* urging affirmance were filed for Global Marine Inc. by *Harvey R. Miller, D. J. Baker,* and *Martin J. Bienenstock;* and for the National Association of Credit Management et al. by *Richard Levin* and *Kenneth N. Klee.*

*Raymond T. Nimmer, pro se,* and *Edward L. Ripley, pro se,* filed a brief for themselves as *amici curiae.*

going reorganization in bankruptcy, monthly payments for the use value of the loan collateral which the bankruptcy stay prevented it from possessing. *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F. 2d 363 (1987). We granted certiorari, 481 U. S. 1068 (1987), to resolve a conflict in the Courts of Appeals regarding application of §§ 361 and 362(d)(1) of the Bankruptcy Code, 11 U. S. C. §§ 361 and 362(d)(1) (1982 ed. and Supp. IV). Compare *Grundy Nat. Bank* v. *Tandem Mining Corp.*, 754 F. 2d 1436, 1440–1441 (CA4 1985); *In re American Mariner Industries, Inc.*, 734 F. 2d 426, 432–435 (CA9 1984); see also *In re Briggs Transp. Co.*, 780 F. 2d 1339, 1348–1351 (CA8 1985).

## I

On June 29, 1982, respondent Timbers of Inwood Forest Associates, Ltd., executed a note in the principal amount of $4,100,000. Petitioner is the holder of the note as well as of a security interest created the same day in an apartment project owned by respondent in Houston, Texas. The security interest included an assignment of rents from the project. On March 4, 1985, respondent filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U. S. C. § 101 *et seq.* (1982 ed. and Supp. IV), in the United States Bankruptcy Court for the Southern District of Texas.

On March 18, 1985, petitioner moved for relief from the automatic stay of enforcement of liens triggered by the petition, see 11 U. S. C. § 362(a), on the ground that there was lack of "adequate protection" of its interest within the meaning of 11 U. S. C. § 362(d)(1). At a hearing before the Bankruptcy Court, it was established that respondent owed petitioner $4,366,388.77, and evidence was presented that the value of the collateral was somewhere between $2,650,000 and $4,250,000. The collateral was appreciating in value, but only very slightly. It was therefore undisputed that petitioner was an undersecured creditor. Respondent had agreed to pay petitioner the postpetition rents from the

apartment project (covered by the after-acquired property clause in the security agreement), minus operating expenses. Petitioner contended, however, that it was entitled to additional compensation. The Bankruptcy Court agreed and on April 19, 1985, it conditioned continuance of the stay on monthly payments by respondent, at the market rate of 12% per annum, on the estimated amount realizable on foreclosure, $4,250,000—commencing six months after the filing of the bankruptcy petition, to reflect the normal foreclosure delays. *In re Bear Creek Ministorage, Inc.*, 49 B. R. 454 (1985) (editorial revision of earlier decision). The court held that the postpetition rents could be applied to these payments. See *id.*, at 460. Respondent appealed to the District Court and petitioner cross-appealed on the amount of the adequate protection payments. The District Court affirmed but the Fifth Circuit en banc reversed.

We granted certiorari to determine whether undersecured creditors are entitled to compensation under 11 U. S. C. § 362(d)(1) for the delay caused by the automatic stay in foreclosing on their collateral.

## II

When a bankruptcy petition is filed, § 362(a) of the Bankruptcy Code provides an automatic stay of, among other things, actions taken to realize the value of collateral given by the debtor. The provision of the Code central to the decision of this case is § 362(d), which reads as follows:

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> "(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> "(2) with respect to a stay of an act against property under subsection (a) of this section, if—

"(A) the debtor does not have an equity in such property; and

"(B) such property is not necessary to an effective reorganization."

The phrase "adequate protection" in paragraph (1) of the foregoing provision is given further content by § 361 of the Code, which reads in relevant part as follows:

"When adequate protection is required under section 362 . . . of this title of an interest of an entity in property, such adequate protection may be provided by—

"(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title . . . results in a decrease in the value of such entity's interest in such property;

"(2) providing to such entity an additional or replacement lien to the extent that such stay . . . results in a decrease in the value of such entity's interest in such property; or

"(3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

It is common ground that the "interest in property" referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay. Thus, it is agreed that if the apartment project in this case had been declining in value petitioner would have been entitled, under § 362(d)(1), to cash payments or additional security in the amount of the decline, as § 361 describes. The crux of the present dispute is that petitioner asserts, and respondent denies, that the phrase "interest in property" also includes the secured party's right (suspended by the stay) to take immediate possession of the defaulted

security, and apply it in payment of the debt. If that right is embraced by the term, it is obviously not adequately protected unless the secured party is reimbursed for the use of the proceeds he is deprived of during the term of the stay.

The term "interest in property" certainly summons up such concepts as "fee ownership," "life estate," "co-ownership," and "security interest" more readily than it does the notion of "right to immediate foreclosure." Nonetheless, viewed in the isolated context of § 362(d)(1), the phrase could reasonably be given the meaning petitioner asserts. Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, see, *e. g.*, *Sorenson* v. *Secretary of Treasury*, 475 U. S. 851, 860 (1986), or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law, see, *e. g.*, *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 54 (1987); *Weinberger* v. *Hynson, Westcott & Dunning, Inc.*, 412 U. S. 609, 631–632 (1973); *Jarecki* v. *G. D. Searle & Co.*, 367 U. S. 303, 307–308 (1961). That is the case here. Section 362(d)(1) is only one of a series of provisions in the Bankruptcy Code dealing with the rights of secured creditors. The language in those other provisions, and the substantive dispositions that they effect, persuade us that the "interest in property" protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure.

Section 506 of the Code defines the amount of the secured creditor's allowed secured claim and the conditions of his receiving postpetition interest. In relevant part it reads as follows:

> "(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and

is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. . . .

"(b) To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

In subsection (a) of this provision the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default. If the latter were included, the "value of such creditor's interest" would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues—since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time. No one suggests this was intended. The phrase "value of such creditor's interest" in § 506(a) means "the value of the collateral." H. R. Rep. No. 95–595, pp. 181, 356 (1977); see also S. Rep. No. 95–989, p. 68 (1978). We think the phrase "value of such entity's interest" in § 361(1) and (2), when applied to secured creditors, means the same.

Even more important for our purposes than § 506's use of terminology is its substantive effect of denying undersecured creditors postpetition interest on their claims—just as it denies *over*secured creditors postpetition interest to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral. Section 506(b) provides that "*[t]o the extent that* an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim." (Emphasis added.) Since this provision permits postpetition interest to be paid only out of the "security cushion," the undersecured creditor,

who has no such cushion, falls within the general rule disallowing postpetition interest. See 11 U. S. C. § 502(b)(2). If the Code had meant to give the undersecured creditor, who is thus denied interest on his *claim*, interest on the value of his *collateral*, surely this is where that disposition would have been set forth, and not obscured within the "adequate protection" provision of § 362(d)(1). Instead of the intricate phraseology set forth above, § 506(b) would simply have said that the secured creditor is entitled to interest "on his allowed claim, or on the value of the property securing his allowed claim, whichever is lesser." Petitioner's interpretation of § 362(d)(1) must be regarded as contradicting the carefully drawn disposition of § 506(b).

Petitioner seeks to avoid this conclusion by characterizing § 506(b) as merely an alternative method for compensating oversecured creditors, which does not imply that no compensation is available to undersecured creditors. This theory of duplicate protection for oversecured creditors is implausible even in the abstract, but even more so in light of the historical principles of bankruptcy law. Section 506(b)'s denial of postpetition interest to undersecured creditors merely codified pre-Code bankruptcy law, in which that denial was part of the conscious allocation of reorganization benefits and losses between undersecured and unsecured creditors. "To allow a secured creditor interest where his security was worth less than the value of his debt was thought to be inequitable to unsecured creditors." *Vanston Bondholders Protective Committee* v. *Green*, 329 U. S. 156, 164 (1946). It was considered unfair to allow an undersecured creditor to recover interest from the estate's unencumbered assets before unsecured creditors had recovered any principal. See *id.*, at 164, 166; *Ticonic Nat. Bank* v. *Sprague*, 303 U. S. 406, 412 (1938). We think it unlikely that § 506(b) codified the pre-Code rule with the intent, not of achieving the principal purpose and function of that rule, but of providing oversecured creditors an alternative method of compensation.

Moreover, it is incomprehensible why Congress would want to favor undersecured creditors with interest if they move for it under § 362(d)(1) at the inception of the reorganization process—thereby probably pushing the estate into liquidation—but not if they forbear and seek it only at the completion of the reorganization.

Second, petitioner's interpretation of § 362(d)(1) is structurally inconsistent with 11 U. S. C. § 552. Section 552(a) states the general rule that a prepetition security interest does not reach property acquired by the estate or debtor postpetition. Section 552(b) sets forth an exception, allowing postpetition "proceeds, product, offspring, rents, or profits" of the collateral to be covered only if the security agreement expressly provides for an interest in such property, and the interest has been perfected under "applicable nonbankruptcy law." See, e. g., In re Casbeer, 793 F. 2d 1436, 1442–1444 (CA5 1986); In re Johnson, 62 B. R. 24, 28–30 (CA9 Bkrtcy. App. Panel 1986); cf. Butner v. United States, 440 U. S. 48, 54–56 (1979) (same rule under former Bankruptcy Act). Section 552(b) therefore makes possession of a perfected security interest in postpetition rents or profits from collateral a condition of having them applied to satisfying the claim of the secured creditor ahead of the claims of unsecured creditors. Under petitioner's interpretation, however, the undersecured creditor who lacks such a perfected security interest in effect achieves the same result by demanding the "use value" of his collateral under § 362. It is true that § 506(b) gives the oversecured creditor, despite lack of compliance with the conditions of § 552, a similar priority over unsecured creditors; but that does not compromise the principle of § 552, since the interest payments come only out of the "cushion" in which the oversecured creditor *does have* a perfected security interest.

Third, petitioner's interpretation of § 362(d)(1) makes nonsense of § 362(d)(2). On petitioner's theory, the undersecured creditor's inability to take immediate possession of

his collateral is always "cause" for conditioning the stay (upon the payment of market rate interest) under § 362(d)(1), since there is, within the meaning of that paragraph, "lack of adequate protection of an interest in property." But § 362(d)(2) expressly provides a different standard for relief from a stay "of an act against property," which of course includes taking possession of collateral. It provides that the court shall grant relief "if . . . (A) the debtor does not have an equity in such property [*i. e.*, the creditor is undersecured]; *and* (B) such property is not necessary to an effective reorganization." (Emphasis added.) By applying the "adequate protection of an interest in property" provision of § 362(d)(1) to the alleged "interest" in the earning power of collateral, petitioner creates the strange consequence that § 362 entitles the secured creditor to relief from the stay (1) if he is undersecured (and thus not eligible for interest under § 506(b)), *or* (2) if he is undersecured *and* his collateral "is not necessary to an effective reorganization." This renders § 362(d)(2) a practical nullity and a theoretical absurdity. If § 362(d)(1) is interpreted in this fashion, an undersecured creditor would seek relief under § 362(d)(2) only if his collateral was not depreciating (or it was being compensated for depreciation) and he was receiving market rate interest on his collateral, but nonetheless wanted to foreclose. Petitioner offers no reason why Congress would want to provide relief for such an obstreperous and thoroughly unharmed creditor.

Section 362(d)(2) also belies petitioner's contention that undersecured creditors will face inordinate and extortionate delay if they are denied compensation for interest lost during the stay as part of "adequate protection" under § 362(d)(1). Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but

that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." 808 F. 2d, at 370–371, and nn. 12–13, and cases cited therein. The cases are numerous in which § 362(d)(2) relief has been provided within less than a year from the filing of the bankruptcy petition.[1] And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, see 11 U. S. C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.[2]

---

[1] See, *e. g., In re Findley,* 76 B. R. 547, 555 (Bkrtcy. Ct. ND Miss. 1987) (6½ months); *In re Efcor, Inc.,* 74 B. R. 837, 843–845 (Bkrtcy. Ct. MD Pa. 1987) (4½ months); *In re Belton Inns, Inc.,* 71 B. R. 811, 818 (Bkrtcy. Ct. SD Iowa 1987) (1 year); *In re Louden,* 69 B. R. 723, 725–726 (Bkrtcy. Ct. ED Mo. 1987) (10 months); *In re Playa Development Corp.,* 68 B. R. 549, 556 (Bkrtcy. Ct. WD Tex. 1986) (7½ months); *In re Cablehouse, Ltd.,* 68 B. R. 309, 313 (Bkrtcy. Ct. SD Ohio 1986) (11½ months); *In re Pacific Tuna Corp.,* 48 B. R. 74, 78 (Bkrtcy. Ct. WD Tex. 1985) (9 months); *In re Development, Inc.,* 36 B. R. 998, 1005–1006 (Bkrtcy. Ct. Haw. 1984) (6 months); *In re Boca Development Associates,* 21 B. R. 624, 630 (Bkrtcy. Ct. SDNY 1982) (7½ months); *In re Sundale Associates, Ltd.,* 11 B. R. 978, 980–981 (Bkrtcy. Ct. SD Fla. 1981) (5 months); *In re Clark Technical Associates, Ltd.,* 9 B. R. 738, 740–741 (Bkrtcy. Ct. Conn. 1981) (9 months).

[2] See, *e. g., In re Anderson Oaks (Phase I) Limited Partnership,* 77 B. R. 108, 109, 110–113 (Bkrtcy. Ct. WD Tex. 1987) ("immediately after the bankruptcy filings"); *In re New American Food Concepts, Inc.,* 70 B. R. 254, 262 (Bkrtcy. Ct. ND Ohio 1987) (3 months); *In re 6200 Ridge, Inc.,* 69 B. R. 837, 843–844 (Bkrtcy. Ct. ED Pa. 1987) (3 months); *In re Park Timbers, Inc.,* 58 B. R. 647, 651 (Bkrtcy. Ct. Del. 1985) (2 months); *In re Bellina's Restaurants II, Inc.,* 52 B. R. 509, 512 (Bkrtcy. Ct. SD Fla. 1985) (1 month); *In re Anchorage Boat Sales, Inc.,* 4 B. R. 635, 641 (Bkrtcy. Ct. EDNY 1980) (4 months); *In re Terra Mar Associates,* 3 B. R. 462, 466 (Bkrtcy. Ct. Conn. 1980) (2 months).

## III

### A

Petitioner contends that denying it compensation under § 362(d)(1) is inconsistent with sections of the Code other than those just discussed. Petitioner principally relies on the phrase "indubitable equivalent" in § 361(3), which also appears in 11 U. S. C. § 1129(b)(2)(A)(iii). Petitioner contends that in the latter context, which sets forth the standards for confirming a reorganization plan, the phrase has developed a well-settled meaning connoting the right of a secured creditor to receive present value of his security—thus requiring interest if the claim is to be paid over time. It is true that under § 1129(b) a secured claimant has a right to receive under a plan the present value of his collateral. This entitlement arises, however, not from the phrase "indubitable equivalent" in § 1129(b)(2)(A)(iii), but from the provision of § 1129(b)(2)(A)(i)(II) that guarantees the secured creditor "deferred cash payments . . . of a value, *as of the effective date of the plan,* of at least the value of such [secured claimant's] interest in the estate's interest in such property." (Emphasis added.) Under this formulation, even though the undersecured creditor's "interest" is regarded (properly) as solely the value of the collateral, he must be rendered payments that assure him that value *as of the effective date of the plan.* In § 361(3), by contrast, the relief pending the stay need only be such *"as will result in the realization . . .* of the indubitable equivalent" of the collateral. (Emphasis added.) It is obvious (since §§ 361 and 362(d)(1) do not entitle the secured creditor to immediate payment of the principal of his collateral) that this "realization" is to "result" not at once, but only upon completion of the reorganization. It is *then* that he must be assured "realization . . . of the indubitable equivalent" of his collateral. To put the point differently: similarity of outcome between § 361(3) and § 1129 would be demanded only if the former read "such other relief . . . as

will give such entity, *as of the date of the relief*, the indubitable equivalent of such entity's interest in such property."

Nor is there merit in petitioner's suggestion that "indubitable equivalent" in § 361(3) connotes reimbursement for the use value of collateral because the phrase is derived from *In re Murel Holding Corp.*, 75 F. 2d 941 (CA2 1935), where it bore that meaning. *Murel* involved a proposed reorganization plan that gave the secured creditor interest on his collateral for 10 years, with full payment of the secured principal due at the end of that term; the plan made no provision, however, for amortization of principal or maintenance of the collateral's value during the term. In rejecting the plan, *Murel* used the words "indubitable equivalence" with specific reference not to interest (which was assured), but to the jeopardized principal of the loan:

> "Interest is indeed the common measure of the difference [between payment now and payment 10 years hence], but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence." *Id.*, at 942.

Of course *Murel*, like § 1129, proceeds from the premise that in the confirmation context the secured creditor is entitled to present value. But no more from *Murel* than from § 1129 can it be inferred that a similar requirement exists as of the time of the bankruptcy stay. The reorganized debtor is supposed to stand on his own two feet. The debtor in process of reorganization, by contrast, is given many temporary protections against the normal operation of the law.

Petitioner also contends that the Code embodies a principle that secured creditors do not bear the costs of reorganization. It derives this from the rule that general administrative expenses do not have priority over secured claims. See §§ 506(c), 507(a). But the general principle does not follow

from the particular rule. That secured creditors do not bear one kind of reorganization cost hardly means that they bear none of them. The Code rule on administrative expenses merely continues pre-Code law. But it was also pre-Code law that undersecured creditors were not entitled to post-petition interest as compensation for the delay of reorganization. See *supra*, at 373; see also *infra*, at 381. Congress could hardly have understood that the readoption of the rule on administrative expenses would work a change in the rule on postpetition interest, which it also readopted.

Finally, petitioner contends that failure to interpret § 362 (d)(1) to require compensation of undersecured creditors for delay will create an inconsistency in the Code in the (admittedly rare) case when the debtor proves solvent. When that occurs, 11 U. S. C. § 726(a)(5) provides that postpetition interest is allowed on unsecured claims. Petitioner contends it would be absurd to allow postpetition interest on unsecured claims but not on the secured portion of undersecured creditors' claims. It would be disingenuous to deny that this is an apparent anomaly, but it will occur so rarely that it is more likely the product of inadvertence than are the blatant inconsistencies petitioner's interpretation would produce. Its inequitable effects, moreover, are entirely avoidable, since an undersecured creditor is entitled to "surrender or waive his security and prove his entire claim as an unsecured one." *United States Nat. Bank* v. *Chase Nat. Bank*, 331 U. S. 28, 34 (1947). Section 726(a)(5) therefore requires no more than that undersecured creditors receive postpetition interest from a solvent debtor on equal terms with unsecured creditors rather than ahead of them—which, where the debtor is solvent, involves no hardship.

## B

Petitioner contends that its interpretation is supported by the legislative history of §§ 361 and 362(d)(1), relying almost entirely on statements that "[s]ecured creditors should not

be deprived of the benefit of their bargain." H. R. Rep. No. 95–595, at 339; S. Rep. No. 95–989, at 53. Such generalizations are inadequate to overcome the plain textual indication in §§ 506 and 362(d)(2) of the Code that Congress did not wish the undersecured creditor to receive interest on his collateral during the term of the stay. If it is at all relevant, the legislative history tends to subvert rather than support petitioner's thesis, since it contains not a hint that § 362(d)(1) entitles the undersecured creditor to postpetition interest. Such a major change in the existing rules would not likely have been made without specific provision in the text of the statute, cf. *Kelly* v. *Robinson,* 479 U. S. 36, 47 (1986); it is most improbable that it would have been made without even any mention in the legislative history.

Petitioner makes another argument based upon what the legislative history does *not* contain. It contends that the pre-Code law gave the undersecured creditor relief from the automatic stay by permitting him to foreclose; and that Congress would not have withdrawn this entitlement to relief without any indication of intent to do so in the legislative history, unless it was providing an adequate substitute, to wit, interest on the collateral during the stay.

The premise of this argument is flawed. As petitioner itself concedes, Brief for Petitioner 20, the undersecured creditor had no absolute entitlement to foreclosure in a Chapter X or XII case; he could not foreclose if there was a reasonable prospect for a successful rehabilitation within a reasonable time. See, *e. g., In re Yale Express System, Inc.,* 384 F. 2d 990, 991–992 (CA2 1967) (Chapter X); *In re Nevada Towers Associates,* 14 Collier Bankr. Cas. (MB) 146, 151–156 (Bkrtcy. Ct. SDNY 1977) (Chapter XII); *In re Consolidated Motor Inns,* 6 Collier Bankr. Cas. (MB) 18, 31–32 (Bkrtcy. Ct. ND Ga. 1975) (same). Thus, even assuming petitioner is correct that the undersecured creditor had an absolute entitlement to relief under Chapter XI, Congress would have been faced with the choice between adopting the rule from

Chapters X and XII or the asserted alternative rule from Chapter XI, because Chapter 11 of the current Code "replaces chapters X, XI and XII of the Bankruptcy Act" with a "single chapter for all business reorganizations." S. Rep. No. 95–989, at 9; see also H. R. Rep. No. 95–595, at 223–224. We think § 362(d)(2) indicates that Congress adopted the approach of Chapters X and XII. In any event, as far as the silence of the legislative history on the point is concerned, that would be no more strange with respect to alteration of the asserted Chapter XI rule than it would be with respect to alteration of the Chapters X and XII rule.

Petitioner's argument is further weakened by the fact that it is far from clear that there was a distinctive Chapter XI rule of absolute entitlement to foreclosure. At least one leading commentator concluded that "a Chapter XI court's power to stay lien enforcement is as broad as that of a Chapter X or XII court and that the automatic stay rules properly make no distinctions between the Chapters." Countryman, Real Estate Liens in Business Rehabilitation Cases, 50 Am. Bankr. L. J. 303, 315 (1976). Petitioner cites dicta in some Chapter XI cases suggesting that the undersecured creditor was automatically entitled to relief from the stay, but the courts in those cases uniformly found in addition that reorganization was not sufficiently likely or was being unduly delayed. See, *e. g.*, *In re Bric of America, Inc.*, 4 Collier Bankr. Cas. (MB) 34, 39–40 (Bkrtcy. Ct. MD Fla. 1975); *In re O. K. Motels*, 1 Collier Bankr. Cas. (MB) 416, 419–420 (Bkrtcy. Ct. MD Fla. 1974). Moreover, other Chapter XI cases held undersecured creditors not entitled to foreclosure under reasoning very similar to that used in Chapters X and XII cases. See *In re Coolspring Estates, Inc.*, 12 Collier Bankr. Cas. (MB) 55, 60–61 (Bkrtcy. Ct. ND Ind. 1977); *In re The Royal Scot, Ltd.*, 2 Bankr. Ct. Dec. (CRR) 374, 376–377 (Bkrtcy. Ct. WD Mich. 1976); *In re Mesker Steel, Inc.*, 1 Bankr. Ct. Dec. (CRR) 235, 236–237 (Bkrtcy. Ct. SD Ind. 1974). The at best divided authority under Chapter XI re-

moves all cause for wonder that the alleged departure from it should not have been commented upon in the legislative history.

The Fifth Circuit correctly held that the undersecured petitioner is not entitled to interest on its collateral during the stay to assure adequate protection under 11 U. S. C. § 362(d)(1). Petitioner has never sought relief from the stay under § 362(d)(2) or on any ground other than lack of adequate protection. Accordingly, the judgment of the Fifth Circuit is

*Affirmed.*