USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1623 BAYBANK-MIDDLESEX, Appellant, v. RALAR DISTRIBUTORS, INC., ET AL., Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Charles R. Bennett, Jr., with whom Kevin J. Simard and Riemer & ________________________ _______________ ________ Braunstein, were on brief for appellant. __________ Christopher W. Parker, with whom Rudolph F. DeFelice, McDermott, _____________________ ___________________ __________ Will & Emery, Paul R. Salvage, Susan L. Burns, and Bacon & Wilson, _____________ ________________ _______________ _______________ were on brief for appellees. ____________________ November 7, 1995 ____________________ STAHL, Circuit Judge. Following its unsuccessful STAHL, Circuit Judge. _____________ intermediate appeal to the district court, Baybank-Middlesex ("Baybank") again challenges the bankruptcy court's disallowance of its claim for postpetition interest and attorney fees under its loan agreement with the Chapter 11 debtors, Ralar Distributors, Inc. and its parent corporation Halmar Distributors, Inc. (collectively "Ralar"). Baybank recovered in full its loan principal and all accrued prepetition interest; only postpetition interest and fees are now at issue. Notwithstanding the fact that Baybank ultimately recovered its prepetition claim in full, the bankruptcy court found that Baybank had been undersecured and thus was not entitled to postpetition fees and interest; in so ruling, the court relied on its finding at a hearing held shortly after the commencement of the case that Baybank was "under water." The bankruptcy court also rejected Baybank's argument that Ralar's failure to adequately protect Baybank's collateral entitled Baybank to a "superpriority" administrative expense claim for the postpetition interest and fees. The district court affirmed, and we now affirm the district court. I.  I.  __ BACKGROUND BACKGROUND __________ On October 16, 1989, Ralar, a wholesale distributor of household and hardware items, filed a voluntary petition -2- 2 for relief under Chapter 11 of the Bankruptcy Code. At that time, Ralar owed Baybank approximately $10 million, secured by all of Ralar's assets.  Shortly after the Chapter 11 filing, Ralar (as debtor in possession) and Baybank reached an impasse in negotiations concerning Ralar's use of cash collateral and inventory during the pendency of the Chapter 11 proceeding. Baybank ultimately refused to extend further credit to Ralar or to allow Ralar to use Baybank's collateral, prompting Ralar to move for a bankruptcy court order allowing it to use the collateral. Over the next four months, the bankruptcy court held a series of "cash collateral hearings," at which Baybank objected to the continued use of its collateral and sought immediate foreclosure. At the first hearing, Baybank and Ralar reached a stipulation allowing Ralar to use cash collateral. At three subsequent hearings, the bankruptcy court issued orders allowing Ralar to continue its operations using the collateral despite Baybank's objection, finding that Baybank's interests were adequately protected because Ralar's continued sales of inventory to its customers would yield a higher net return than Baybank could realize if it foreclosed. At the second cash collateral hearing, the bankruptcy court found that Baybank was "under water" (undersecured), but that Ralar's operating plan was not likely to put Baybank further under water. -3- 3 After four months of operation under bankruptcy court orders allowing Ralar to use the collateral, the court ultimately found that Ralar's plan of inventory reduction was no longer protecting Baybank's interests. Thus, in March 1990 it granted Baybank relief from the automatic stay, permitting Baybank to foreclose on Ralar's assets.  Payments Ralar made to Baybank during its postpetition operations combined with the proceeds of the foreclosure were sufficient to repay all of Baybank's loan principal, all accrued prepetition interest, and an unspecified amount of postpetition interest. Subsequent to the foreclosure, Baybank filed a proof of claim for $2.2 million, comprised entirely of Baybank's unsecured postpetition interest, attorney fees, and collection costs, which Ralar was obligated to pay Baybank under the preexisting loan agreement. Because Baybank already had liquidated all of Ralar's assets, this claim was unsecured. However, Baybank sought to recover the postpetition interest and fees as a so-called "superpriority" administrative expense claim under 11 U.S.C. 507(b), arguing that if its collateral had been adequately protected, the foreclosure proceeds would have been sufficient to cover the claimed postpetition interest and fees.  The bankruptcy court disallowed the claim in its entirety, ruling that (1) Baybank was an undersecured -4- 4 creditor and therefore was not entitled to recover postpetition interest and fees under 11 U.S.C. 506(c), (2) Baybank failed to demonstrate a failure of adequate protection, and (3) Baybank was not entitled to a superpriority claim under 11 U.S.C. 507(b) even if Ralar had failed to provide adequate protection of Baybank's interest in the collateral. The district court affirmed the bankruptcy court's factual finding that Baybank was undersecured and found as a matter of law that Baybank was not entitled to postpetition interest and fees nor to a superpriority claim for failure of adequate protection. II. II. ___ DISCUSSION DISCUSSION __________ A. Standard of Review ______________________ We review challenged rulings of law by the bankruptcy court and the district court de novo, while __ ____ contested findings of fact by the bankruptcy court are reviewed only for clear error. See Western Auto Supply Co. ___ ________________________ v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d __________________ ___________________________ 714, 719-20 n.8 (1st Cir. 1994). We are free to affirm a district court's ruling on any ground supported in the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings below. Levy v. Federal ____ _______ Deposit Ins. Corp., 7 F.3d 1054, 1056 (1st Cir. 1993). __________________ B. Postpetition Interest and Fees __________________________________ -5- 5 Baybank sought postpetition interest, attorney fees, and collection costs that it claimed it was entitled to charge Ralar under the terms of the loan agreement. Under the Bankruptcy Code, only "oversecured" creditors are entitled to receive postpetition interest and loan-related fees and costs. 11 U.S.C. 506(b);1 United Sav. Ass'n of _____________________ Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. _____ ________________________________________ 365, 372 (1988). A creditor is oversecured when the value of its collateral exceeds the amount of its claim; postpetition interest and fees are allowable only to the extent of that oversecurity. See Timbers of Inwood Forest, 484 U.S. at 372. ___ ________________________ At the second cash collateral hearing, the bankruptcy judge made these factual findings: It seems clear, at least I certainly find, that a liquidation of this inventory at this point, if the bank, as sought, were permitted to foreclosure [sic], that a liquidation only through bulk sales would produce a disaster for all, and certainly for the bank . . . .  ____________________ 1. 11 U.S.C. 506(b) provides in relevant part:  To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose. -6- 6 Both secured parties,2 I find, are now under water. The question is, the debtor's proposal, is it likely to put them further under water. And I find that it is not likely, it is not likely that the debtor's proposal will put the secured parties further under water.3 "Under water" in the context of security interests means undersecured, i.e., the value of the collateral is less than the amount of the debt. Webster's Third New International __________________________________ Dictionary 2491 (1986). Thus, at a fully litigated, two-day __________ evidentiary hearing held just two weeks after the commencement of bankruptcy, the bankruptcy judge found in no uncertain terms that Baybank was an undersecured creditor.4 Baybank argues that the bankruptcy judge's finding that Baybank was undersecured was obiter dictum, not a ______ ______ factual finding, and that the courts below erred in using that dictum to disallow its claim for postpetition interest and fees. We disagree. The bankruptcy judge stated clearly  ____________________ 2. There was another secured creditor, junior to Baybank, also seeking relief from the stay because of lack of adequate protection; only Baybank is a party to this appeal. 3. Because much of Ralar's inventory was seasonal, the bankruptcy judge determined that a forced liquidation by Baybank would yield less than Ralar's plan to continue sales and use the proceeds to purchase new in-season inventory. We assume that the judge's prediction proved to be correct; that would explain why Baybank recovered all its principal and prepetition interest in spite of the judge's finding that, based on liquidation value, Baybank was "under water." 4. There has been no suggestion, nor is it plausible on this record, that Baybank was oversecured at the time of filing but that the collateral value eroded substantially in the two weeks between filing and the November 1 hearing. -7- 7 that he was making a finding, and there was good reason to make that finding in that context. At the hearing where the bankruptcy judge found that Baybank was "under water," the precise issue to be decided was whether Baybank was adequately protected against erosion in collateral value, as required by 11 U.S.C. 363(e). The parties presented evidence on the effect Ralar's use of cash collateral would likely have on the value of Baybank's collateral. In making the adequate protection determination, it was entirely logical for the judge to consider the value of the collateral relative to the amount of the debt owed Baybank. Indeed, we think it would be odd not to determine collateral value in an adequate protection hearing. A sufficient equity cushion is itself a recognized form of adequate protection, thus collateral valuation is a logical step in making an adequate protection determination. See, e.g., First Agric. Bank v. Jug End in the Berkshires, 46 ___ ____ ______________________________________________ B.R. 892, 899 (Bankr. D. Mass. 1985) ("The classic protection for a secured debt justifying continuation of the stay is the existence of an `equity cushion.'"). We conclude that the bankruptcy judge's finding that Baybank was undersecured was not dictum, but a factual finding made as part of an adequate protection determination. Baybank has not shown that finding to be clearly erroneous. -8- 8 Baybank also makes this related argument: a finding that a creditor is adequately protected, made at a hearing early in a Chapter 11 case, cannot be binding at a later hearing to determine whether that protection ultimately proved inadequate. If such a finding were binding, the argument goes, then a court that once found protection to be adequate could never later find that the protection had failed, and section 507(b), which provides a "superpriority" claim where adequate protection fails, would be rendered a nullity. We agree with that argument, as far as it goes, but it falls short in this appeal. We find that Baybank's appeal is foreclosed by the bankruptcy court's finding at the cash collateral hearing that Baybank was undersecured, not its ____________ finding that Baybank was adequately protected. We need not ____________________ determine whether there was a failure of adequate protection because (1) Baybank, as an undersecured creditor, is not entitled to postpetition interest and fees under 506(b)5  ____________________ 5. Baybank might have argued, but did not, that even a valid finding as to collateral value made at an adequate protection hearing has no res judicata effect when valuations are to be ___ ________ made for other purposes at later proceedings. See, e.g., In ___ ____ __ re Richardson, 97 B.R. 161, 162 (Bankr. W.D.N.Y. 1989) ______________ (valuation of creditor's collateral made for one purpose is not res judicata as to later valuation in same bankruptcy ___ ________ case for different purposes). Instead, Baybank avoided the res judicata issue by arguing that "The issue before this ___ ________ Court is not the value of Baybank's collateral. The material issue is whether or not the Bankruptcy Court's adequate protection order failed. . . . Thus, the valuation issue is not material to this appeal." We will not consider potentially applicable arguments that are not squarely presented in a party's appellate brief. See, e.g., United ___ ____ ______ -9- 9 and (2) Ralar's use of the collateral caused no harm or loss to Baybank that could give rise to a claim under 507(b), as we explain further below.  ____________________ States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (appellate ______ _______ arguments not presented "squarely and distinctly" are deemed waived). -10- 10 C. Baybank's Claim for Failure of Adequate Protection ______________________________________________________ Baybank asserts that Ralar's use of the collateral eroded its value, constituting an allowable claim entitled to superpriority under 11 U.S.C. 507(b).6 The basis for Baybank's claim is that it "suffered a loss" due to Ralar's _______________ use of the collateral; most of its brief focuses, however, not on the nature or extent of that claimed loss, but on how such a loss can become an allowable superpriority claim under 507(b). Baybank has failed to present a plausible argument on the threshold issue of whether in fact it suffered a loss, given that it recovered its prepetition claim in full.  ____________________ 6. 11 U.S.C. 507(b) provides:  If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim under such subsection. A "claim allowable under subsection (a)(1) of this section" is, by further cross-reference, an "administrative expense[] allowed under section 503(b)." See 11 U.S.C. 507(a)(1). ___ The relevant part of 503(b) allows as administrative expenses "the actual, necessary costs and expenses of preserving the estate." See 11 U.S.C. 503(b). ___ -11- 11 The logical structure of Baybank's argument is: (1) Ralar's unprofitable operations using Baybank's collateral resulted in an erosion in the total value of collateral securing Baybank's loan; (2) if the collateral had not been so eroded, the collateral value would have exceeded the debt owed Baybank, and as an oversecured creditor it would have been eligible for postpetition interest and fees under  506(c); (3) thus, Ralar's use of the collateral caused Baybank to suffer a loss to the extent of the postpetition interest and fees it would have recovered had there been no erosion in collateral value, and that loss is a "claim . . . arising from the stay of action against [its collateral]" as provided in 507(b); (4) Ralar's use of the collateral and therefore the resultant "loss" to Baybank were "actual, necessary costs and expenses of preserving the estate" which qualify as an administrative claim under 503(b); and, (5) the erosion in collateral value resulted from a failure of adequate protection, thus entitling Baybank to receive a 507(b) "superpriority" for its 503(b) administrative expense claim. This fascinating argument has led the parties and two courts through a complex maze of ambiguous statutory provisions and opaque, inconsistent case law. We decline the invitation to enter the labyrinth ourselves, believing that we need go no further than its threshold. -12- 12 Because we find no error in the bankruptcy judge's factual finding that Baybank was undersecured, we conclude that Baybank had no entitlement to postpetition interest and fees and thus suffered no loss that might give rise to a claim under 503(b) and 507(b). Put differently, even if there was somehow a failure of adequate protection (a question we do not reach), Baybank has no claim "arising from the stay of action", see 507(b), because it recovered its ___ prepetition claim in full; as an undersecured creditor it is entitled to no more. On the contrary, it appears (as the bankruptcy judge concluded) that Ralar's use of the collateral benefitted Baybank, allowing it to recover its __________ prepetition claim in full in spite of its being undersecured at the start of the Chapter 11 case. In any event, it simply is not necessary to address whether there was a failure of adequate protection where an undersecured creditor ultimately recovers its prepetition claim in full. We conclude that Ralar's use of Baybank's collateral caused no loss to Baybank, therefore Baybank has no claim under 503(b) and 507(b). III. III. ____ CONCLUSION CONCLUSION __________ For the reasons articulated above, we affirm the district court's judgment. Affirmed. Costs to the appellees. Affirmed. Costs to the appellees. ________ ______________________ -13- 13