In re Ken D. and Tonya J.
KEATON, Debtors.

Ken D. and Tonya J. KEATON,
Appellants,

v.

BOATMEN'S BANK OF TENNESSEE,
Appellee.

No. 1:95–CV–252.
Bankruptcy No. 94–13206.

United States District Court,
E.D. Tennessee.

Aug. 28, 1997.

Richard L. Banks, Richard L. Banks & Associates, PC, Cleveland, TN, for appellants.

David E. Nelson, Jr., Wagner, Nelson & Weeks, Chattanooga, TN, Herman O. Loewenstein, Nashville, TN, for appellee.

Arthur C. Grisham, Jr., Grisham & Knight, Chattanooga, TN, amicus.

William R. Sonnenburg, U.S. Department of Justice, Office of U.S. Trustee, Chattanooga, TN, trustee.

## MEMORANDUM

COLLIER, District Judge.

In this appeal from a final decision of the United States Bankruptcy Court for the Eastern District of Tennessee, *In re Ken D. Keaton,* 182 B.R. 203 (Bankr.E.D.Tenn.1995) (Stinnett, J.), Debtors Ken D. Keaton and Tonya J. Keaton challenge the Bankruptcy Court's decision allowing Creditor Boatmen's Bank of Tennessee ("the Bank") to collect attorney fees[1] incurred after Debtors filed a

---

1. The Court acknowledges the lack of uniformity in the use of "attorney fees", "attorney's fee", "attorney's fees", and "attorneys fees." In the decision below "attorney's fees" was used while the parties used "attorneys fees" and "attorney fees." This lack of uniformity was recently commented upon by the United States Court of Ap-

Chapter 13 bankruptcy petition. The issue on appeal arose because the Bank has an undersecured claim against the bankruptcy estate. The Bank asserts an $18,691.43 claim, including $250.00 in attorney fees, which is secured by collateral valued at $13,500.00. Thus, the Bank's claim is undersecured by approximately $5000.00.

## I. STANDARD OF REVIEW

Jurisdiction to hear appeals from Bankruptcy Court is conferred by 28 U.S.C. § 158. In determining appeals from Bankruptcy Court, this Court sits as an appellate court, reviewing the Bankruptcy Court's findings of fact under a clearly erroneous standard, but conducting a de novo review of the Bankruptcy Court's conclusions of law. *Fed.R.Bankr.P.* 8013; *In re Isaacman*, 26 F.3d 629, 630 (6th Cir.1994); *Harbour Lights Marina v. Wandstrat*, 153 B.R. 781 (S.D.Ohio 1993). However, the Court may overturn matters within the discretion of the Bankruptcy Court only for an abuse of discretion. Fed.R.Bankr.P. 8003; *American Imaging Services, Inc. v. Eagle–Picher Industries, Inc. (In re Eagle–Picher Industries, Inc.)*, 963 F.2d 855, 858 (6th Cir.1992);

accord *Investors Credit Corp. v. Batie*, 995 F.2d 85, 88 (6th Cir.1993).

■ Debtors present two issues for review: (1) whether the Bank, as an undersecured creditor, is entitled to collect, from the bankruptcy estate, attorney fees incurred postpetition in contradiction to the express requirements and mandates of 11 U.S.C. § 502(b), 11 U.S.C. § 506(b), and Bankruptcy Rule 2016; and (2) whether the Bankruptcy Court erred in denying intervention by the United States Trustee in contradiction to the powers and obligations of that office in reviewing fee applications.[2]

Because the issues raised by Debtors involve conclusions of law and are matters of statutory construction, the Court will review the Bankruptcy Court's decision *de novo*. Having considered the arguments of the parties, carefully reviewed the briefs, the applicable law, and several sections of the Code *in pari materia*, the Court will **AFFIRM** the Bankruptcy Court's decision allowing attorney fees.

## II. DISCUSSION

The issue *sub judice* can be considered in three parts. First, Debtors contend the

---

peals for the Sixth Circuit in *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir.1997):

We appreciate the effort to resolve for the circuit the stylistic dilemma of whether to use "attorney fees," "attorneys fees," "attorney's fees," or "attorneys' fees" found in footnote one of *Stallworth v. Greater Cleveland Regional Transit Authority*, 105 F.3d 252 (6th Cir.1997). Whereas the statute at issue in *Stallworth*, 28 U.S.C. § 1447(c), uses "attorney fees," the statute we interpret, 28 U.S.C. § 1927, uses "attorneys' fees," while the text of Rule 11 employs both "attorney's fees" and "attorneys' fees" in various subsections. As our sources are divided, we have surveyed the landscape and conclude that "attorney fees" is an acceptable form, analogous to "counsel fees" or "expert witness fees." See BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 91 (2d ed.1995) (recognizing that "attorney fees," though inelegant, is increasingly common). Finding uniform terminology advantageous, we shall adhere to Stallworth's use of "attorney fees."

*Ridder*, 109 F.3d 288 at 290 n. 1. As the court did in Ridder, we will adopt the terminology "attorney fees."

**2.** Debtors' argument concerning Bankruptcy Rule 2016 and the failure to allow the trustee to intervene merits little attention. According to Debtors, because the Bank's attorney fees are to

be paid from the bankruptcy estate, Rule 2016 requires the Bank to submit an application for compensation or reimbursement to the trustee. Thus, Debtors argue the Bankruptcy Court erred in denying intervention by the trustee in contradiction to the trustee's power and obligation to review fee applications.

The Bank contends the Bankruptcy Court "apparently determined that the trustee's attempted intervention (within a week of the date upon which the memorandum opinion was filed, and more than two months after the case was argued) was untimely and that to permit intervention would unduly delay adjudication of the issue."

Debtors point to no statutory provision or rule that requires the Bankruptcy Court to allow the trustee to intervene. Bankruptcy Rule 2018 governs the right to intervene in core bankruptcy proceedings. *See* Advisory Committee Note to Bankruptcy Rule 7024. Rule 2018(a) allows only permissive intervention: "In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Thus, the Court concludes Debtors' argument that the Bankruptcy Court erred by failing to permit the trustee to intervene is without merit.

Bank's attorney fees are a postpetition claim. Second, *arguendo* the fees are a prepetition claim, Debtors alternatively argue the fees are disallowed by § 506(b) because the Bank is not an oversecured creditor. Third, Debtors assert the analysis in *United Savings Association of Texas v. Timbers of Inwood Forest Associates,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), which disallows postpetition interest to an undersecured or unsecured creditor based on § 506(b), can be extended to disallow postpetition attorney fees to the Bank.

## A. Are the attorney fees at issue a postpetition claim or a prepetition claim?

■ Based on § 502, Debtors argue the Bank has not asserted a prepetition claim for attorney fees. In relevant part, § 502 provides:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) ... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition,* and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law *for a reason other than because such claim is contingent or unmatured;*

(2) such claim is for unmatured interest....

\*     \*     \*

(c) There shall be estimated for the purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which ...

would unduly delay administration of the case....

11 U.S.C. § 502 (emphasis added).

Emphasizing the phrase "as of the date of the filing of the petition," Debtors contend attorney fees incurred after the petition is filed are not allowed by § 502. Citing *In re Saunders,* 130 B.R. 208 (Bankr.W.D.Va. 1991); *Matter of Mobley,* 47 B.R. 62 (Bankr. N.D.Ga.1985); and *In re Stafford (Traylor v. Stafford),* 30 B.R. 338 (Bankr.E.D.Ark.1983), Debtors argue the Bank has a postpetition claim at best. According to Debtors, however, postpetition claims concerning a Chapter 13 bankruptcy are governed by 11 U.S.C. § 1305. Section 1305 allows only two types of postpetition claims: taxes and consumer debts necessary for the debtor's performance under the plan. Because attorney fees fit in neither of these categories, Debtors conclude the Bank's attorney fees claim should be disallowed.

Debtors read § 502 too narrowly, however. By negative implication, § 502(b)(1) allows "contingent" or "unmatured" claims which are enforceable against the debtor "under any agreement or applicable law." Moreover, § 101(5)(A) broadly defines "claim" to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Here, it is undisputed that the Bank is entitled to attorney fees under an agreement with Debtors.[3] Thus, the question becomes whether the Bank's claim is a "contingent" or "unmatured" claim within §§ 502(b)(1) and 101(5)(A). In considering this question, the Court finds the Sixth Circuit's decision in *In re Martin,* 761 F.2d 1163 (6th Cir.1985), instructive. The creditor in *Martin* "filed [an] adversary proceeding to have its debt determined to be excepted from discharge under

---

**3.** The Bank's agreement with Debtors provides: In the event Buyer defaults in the payment of any amount due hereunder, or in the performance of any obligation hereof, Seller or any subsequent holder shall be entitled to collect, if permitted by law, all expenses incurred in collecting or attempting to collect any such amount, or in en-

forcing or attempting to enforce any of the provisions hereof or incurred in regaining possession of the vehicle, including reasonable attorney's fees if permitted by law, if this contract is referred for collection to any attorney. *In re Keaton,* 182 B.R. 203, 205 n. 1.

11 U.S.C. § 523(a)(2)(B)." [4] The creditor also requested attorney fees incurred in prosecuting the adversary proceeding.

The court first determined the creditor was entitled to an exception from discharge because the debtor had materially misrepresented his net worth in obtaining the loan at issue. Next, in considering whether the creditor was entitled to attorney fees, the court reasoned:

The Bankruptcy Act explicitly grants fees and costs to prevailing *debtors:*

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.

11 U.S.C. § 523(d); *see In re Carmen,* 723 F.2d 16 (6th Cir.1983).

The congressional failure to award attorney's fees to prevailing creditors was not accidental. Congress enacted section 523(d) out of concern that *creditors* were using the threat of litigation to induce consumer debtors to settle for reduced sums, even though the debtors were in many cases entitled to discharge.

The bill does not award the creditor attorney's fees if the creditor prevails. Though such a balance might seem fair at first blush, such a provision would restore the balance back in favor of the creditor by inducing debtors to settle no matter what the merits of their cases. In addition, the creditor is generally better able to bear the costs of the litigation than a bankrupt debtor, and it is likely

that a creditor's attorney's fees would be substantially higher than a debtor's, putting an additional disincentive on the debtor to litigate.

H.R.Rep. No. 595, *supra* p. 1166, at 131, *reprinted in* 1978 U.S.Code Cong. & Ad. News at 6092.

However, creditors are entitled to recover attorney's fees in bankruptcy claims if they have a contractual right to them valid under state law, which appears to be the case here, as the note itself provided that the Martins would reimburse the Bank for the costs and attorney's fees necessary to collect the note. *Security Mortgage Co. v. Powers,* 278 U.S. 149, 153–54, 49 S.Ct. 84, 85–6, 73 L.Ed. 236 (1928); *In re Bain,* 527 F.2d 681, 685 (6th Cir.1975). The validity of the creditor's claim for attorney's fees does not depend on whether the obligation is secured (unless state law so provides). *In re United Merchants & Manufacturers,* 674 F.2d 134, 137 (2d Cir.1982). Tennessee state law enforces such contractual obligations for reasonable attorney's fees. *See, e.g., Coble Systems v. Gifford Co.,* 627 S.W.2d 359, 364 (Tenn. Ct.App.1981).

The bankruptcy court disallowed costs to the Bank pursuant to its discretionary power to award costs under former Bankruptcy Rule 754(b). However, *a contractual right to attorney's fees is part of the debt* and is not dependent on an award of costs, so Rule 754 had no application here.

*Martin,* 761 F.2d at 1167–68 (emphasis added).

Although the *Martin* court did not face the precise issue presented in this case, its reasoning is nevertheless helpful in considering

---

**4.** As excerpted by the Sixth Circuit, § 523 provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

\* \* \* \* \* \*

(B) use of a statement in writing—

(I) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

*Id.* at 1166.

the claim at hand. The *Martin* court's conclusion that "a contractual right to attorney's fees is part of the debt" lends force to the argument that the Bank's attorney fee claim arose prior to the filing of the petition. In other words, by virtue of the contract, the Bank had a prepetition right to collect attorney fees, *albeit* an unmatured, contingent right; *i.e.*, the right was contingent upon the Bank actually incurring attorney fees in collecting the debt. The Bankruptcy Court succinctly articulated this point: "While the representation may have been performed after the petition was filed, Boatmen's right to collect attorney's fees arose out of the contract and is a prepetition claim." *In re Keaton*, 182 B.R. at 205.[5] Having concluded the Bank asserts a prepetition claim for attorney fees, the Court will consider Debtors' alternative argument.

### B. Is the Bank's prepetition claim for attorney fees barred by § 506(b) because the Bank is an undersecured creditor?

■ Debtors' second argument requires interpretation of 11 U.S.C. § 506, which reads:

506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

According to Debtors, even if the Bank has a prepetition claim for attorney fees, it is barred by § 506(b).[6] Reduced to its essential elements, Debtors' argument rests on the principle of *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another. First, Debtors contend the American Rule, which requires each party to bear its own costs, is the default rule concerning attorney fees. Second, Debtors contend § 506(b) is an exception to the American Rule which allows oversecured creditors to recover attorney fees. Third, Debtors assume the Bankruptcy Code contains no similar exception to the American Rule allowing undersecured creditors to recover attorney fees. Thus, Debtors conclude Congress intended to articulate an exception to the American Rule for oversecured creditors only.

---

**5.** The Bankruptcy Court also notes treating claims for attorney fees incurred after the petition is filed as prepetition claims. The Bankruptcy Court stated:

The result is actually more beneficial for debtors in bankruptcy. If the attorney's fees are a postpetition debt, they will not be discharged in a Chapter 7 liquidation case. The creditor will have a right to collect them after the debtor receives a discharge. 11 U.S.C. §§ 101(5)(A), 101(12), 524(a) and 727(b) (no "claim", no "debt", no discharge).
Likewise, if the fees are a postpetition debt, a Chapter 13 debtor cannot necessarily discharge them by providing for them in the Chapter 13 plan and completing the plan. If the creditor chooses not to file a proof of claim, the postpetition debt will not be discharged, and the creditor can collect after the debtor completes the Chapter 13 plan and receives a discharge. 11 U.S.C. §§ 1305, 1322(b)(6) and 1328(a)....

*In re Keaton*, 182 B.R. at 206–207.

**6.** Debtors also argue *Baybank–Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200 (1st Cir.1995), supports their position. In *Baybank*, the First Circuit, discussing a claim for "postpetition interest, attorney fees, and collection cost," and using § 506(b) as its authority, said: "Under the Bankruptcy Code, only 'oversecured' creditors are entitled to receive postpetition interest and loan-related fees and costs." 69 F.3d at 1202. The court relied upon Timbers for this statement.

Despite its logical appeal, this argument rests on a faulty premise. Debtors assume § 502(b) does not allow undersecured creditors to claim attorney fees incurred after the petition is filed. As noted previously, the Court finds § 502(b) is sufficiently broad to allow contingent unmatured attorney fees as a prepetition claim.

Anticipating a finding that attorney fees are allowed under § 502(b), Debtors argue § 502(b) is superfluous if § 502(b) allows attorney fees. This argument is also unpersuasive. The obvious structure of the Bankruptcy Code and the plain language of § 506 reveal that § 506(b) does not then allow attorney fee claims of oversecured creditors; it makes those claims *secured* claims to the extent of the excess collateral.

According to the United States Supreme Court, § 506 "governs the definition and treatment of secured claims." *United States v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Both the House Report and the Senate Report accompanying the Bankruptcy Reform Act of 1978 state § 506(b)

> codifies current law by entitling a creditor with an oversecured claim to any reasonable fees[,] . . . costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.

H.R.Rep. No. 95–595, at 356–357 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S.Rep. No. 95–989, at 68 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787.

Thus, § 506(b) is not superfluous. It supplements the general allowance of § 502 by elevating oversecured claims for attorney fees to secured status. Having found Debtors' second argument unpersuasive, the Court will consider Debtors' final argument concerning *Timbers.*

**C.** ***Does Timbers require the Court to conclude § 506(b) disallows attorney fees incurred after the petition is filed?***

In *Timbers,* the Court determined undersecured creditors are not entitled to re-cover interest which accrues after a bankruptcy petition is filed. The Court reasoned: "Since [§ 506(b) ] permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest. See 11 U.S.C. § 502(b)(2)." 484 U.S. at 372–73, 108 S.Ct. at 631. Debtors argue § 506(b) does not distinguish between interest and attorney fees; therefore, the reasoning in *Timbers* applies to bar the Bank's attorney fee claim.

Again, Debtors' argument rests on the following faulty premise: there is a general rule disallowing attorney fees. Unlike unmatured interest, which is specifically disallowed in § 502(b)(2), there is no general rule disallowing attorney fees. Instead, a natural reading of § 502(b)(1) specifically allows claims for attorney fees that are contingent or unmatured. Because there is no general rule disallowing attorney fees incurred after the petition is filed, the Court finds *Timbers* distinguishable. Consequently, Debtors' final argument is unpersuasive.

### III. *CONCLUSION*

After reviewing the relevant portions of the Bankruptcy Code in light of the parties' arguments, the Court finds 11 U.S.C. § 502 allows undersecured creditors to claim attorney fees incurred after the petition is filed, and this claim is not disallowed by 11 U.S.C. § 506(b). As revealed by the reasoning in *United Merchants,* 674 F.2d 134, which the Sixth Circuit implicitly approved in *Martin,* this result is not contrary to the policies underlying bankruptcy law.

> When equally sophisticated parties negotiate a loan agreement that provides for recovery of collection costs upon default, courts should presume, absent a clear showing to the contrary, that the creditor gave value, in the form of a contract term favorable to the debtor or otherwise, in exchange for the collection costs provision. Such a creditor *should* recover more in the division of the debtor's estate because it gave more to the debtor at the time it made the loan. Rather than providing an undeserved bonus for one creditor at the

expense of others, allowing a claim under a collections cost provision merely effectuates the bargained-for terms of the loan contract.

*Id.* at 137. For all the aforementioned reasons, the decision of the Bankruptcy Court will be **AFFIRMED**.